**MARTIN INSURANCE AGENCY, INC., and International Assurance, Inc., Plaintiffs–Appellants,**

**v.**

**PRUDENTIAL REINSURANCE COMPANY, et al., Defendants–Appellees.**

No. 89–3602.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1990.

Before THORNBERRY, GEE, and BARKSDALE, Circuit Judges.

THORNBERRY, Circuit Judge:

Martin Insurance Agency, Inc. ("Martin") appeals a district court order dismissing its action against the appellees, Prudential Reinsurance Co. and six New York Insurance Exchange syndicates. The appellees were reinsurers for the now insolvent Transit Casualty Company ("Transit") on a particular group insurance policy, and Martin brought this action against them for the reimbursement of claims Martin had paid out under that policy. We affirm the district court because, under the Uniform Insurers Liquidation Act ("UILA"), the proper forum for Martin's claims for the reinsurance proceeds is the Missouri court that is adjudicating Transit's liquidation proceedings.

## FACTS AND PROCEDURAL HISTORY

Martin, an insurance agency located in the state of Louisiana, undertook in 1979 to write physical damage insurance coverage for members of the Wally Byam Caravan Club, a club for owners of Airstream trailers. From 1979 to 1982, Martin insured the club members through Lloyds of London. Beginning in 1982 Martin insured the club members through Transit, an insurance company organized and domiciled in the state of Missouri.

In connection with this insurance coverage, Martin executed two contracts with Donald F. Muldoon & Co., a managing general agent of Transit: an Insurance Management Agreement and a Claims Service Contract. The Management Agreement gave Martin limited authority to issue Transit policies to Wally Byam Club members. The Management Agreement also conditioned the coverage by Transit on Transit's purchase of reinsurance to cover the Wally Byam account.[1] The Claims Ser-

James R. Logan, IV, Russell M. Cornelius, Cornelius, Sartin & Murphy, New Orleans, La., for plaintiffs-appellants.

M. Lizabeth Talbott, Galen S. Brown, New Orleans, La., for defendants-appellees.

---

1. Reinsurance is "the ceding by one insurance company to another of all or a portion of its

risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to

vice Contract authorized Martin to adjust and settle certain claims made under the Wally Byam policy. None of the appellees was a party to either of these contracts.

For the period of January 1 to December 31, 1983, Transit, through an intermediary, obtained facultative reinsurance for the Wally Byam policy [2] from Prudential Reinsurance Co. ("Prudential") and several New York Insurance Exchange syndicates: Transit Casualty Syndicate, Inc. (now Lancer Syndicate, Inc.), Pruco Syndicate, Inc., John Street Syndicate, Inc., Essex Syndicate, Inc., and C U Syndicate, Inc. The appellees reinsured Transit in varying percentages totalling 30% of the risk,[3] with Transit retaining 10% of the risk. Because of its prior relationship with Lloyds, Martin had placed 50% of the reinsurance coverage with Lloyds of London's reinsurers, and Martin retained 10% itself. The London reinsurers' certificates allowed for the direct payment of proceeds to Martin.

The reinsurance coverage by the New York Insurance Exchange syndicates was evidenced by New York Insurance Exchange Contract No. A23689–82 ("NYIE Certificate"), and the coverage by Prudential Reinsurance was evidenced by a separate facultative certificate, No. RFM400111 ("Prudential Certificate"). The NYIE Certificate and the Prudential Certificate provided that the reinsurers would reimburse Transit for payment of losses covered under Transit's Wally Byam account. Neither certificate provided for the direct payment of reinsurance proceeds to Martin or to the Wally Byam policyholders. Both certificates stated that only Transit or its statutory successor shall have any rights under the reinsurance contracts.

Additionally, both certificates contained almost identical "insolvency clauses." For example, the Prudential Certificate's insolvency clause provides, in pertinent part:

In the event of the insolvency of the Company, reinsurance under this Certificate shall be payable by Prudential Reinsurance on the basis of the liability of the Company without diminution because of such insolvency, directly to the Company or its liquidator, receiver, or statutory successor, except as otherwise provided by law.

In other words, the insolvency clause ensured that if Transit were to become insolvent, the reinsurer would pay Transit's liquidator for its share of Transit's liability under the policy, even if Transit, by virtue of its insolvency, had not actually sustained a loss. *See Arrow Trucking Co. v. Continental Ins. Co.,* 465 So.2d 691, 699 (La. 1985) (discussing insolvency clauses in reinsurance contracts).

On December 3, 1985, Transit was declared insolvent by order of the Circuit Court of Cole County, Missouri, in *Hall v. Transit Casualty Co.,* No. CV185–1206CC. The court appointed the Director of the Division of Insurance of the state of Missouri as permanent receiver, to wind up and liquidate the company. In its order of liquidation, the court ordered, *inter alia,*

7. All persons, wherever situated, are permanently enjoined and restrained from prosecuting or bringing any action, issuing any process or obtaining any judgment against defendant Transit Casualty Company or its properties or assets;

8. All persons, wherever situated, are hereby enjoined from interference with the possession, title or rights of petitioner as Receiver in Liquidation in and to the assets of defendant Transit Casualty Company and from interference with the

the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured and handles all matters prior to and subsequent to loss." 13A Appleman, *Insurance Law and Practice* § 7681, at 480 (1976).

2. Facultative reinsurance covers a portion of the risk on a single specific policy of the ceding company. *Arrow Trucking Co. v. Continental Ins. Co.,* 465 So.2d 691, 695–96 (La.1985).

3. Prudential reinsured Transit for 10% of the Wally Byam risk; Lancer, 10%; Pruco Syndicate, 4%; Street Syndicate, 2%; Essex Syndicate, 2%; and C U Syndicate, 2%. Golden Hill Syndicate, also a defendant/appellee, did not participate in the risk and is potentially liable only as the successor syndicate of the Pruco, Essex, and Street Syndicates.

conduct of liquidation of defendant Transit Casualty Company except as may be ordered by the Court.

Following Transit's insolvency, the London reinsurers ultimately reimbursed Martin directly for their percentage of Martin's loss payments to the Wally Byam policyholders, pursuant to the direct payment provisions of the London reinsurers' certificates.

In 1987 Transit's receiver made demand on one of the appellees, Lancer Syndicate ("Lancer"), for reinsurance proceeds due under the Wally Byam account. Lancer paid the receiver, and the Missouri court handling the liquidation proceeding approved a commutation agreement fully discharging Lancer from any liability it had to Transit or its receiver.

Also in 1987, Martin filed official proofs of claim in Transit's Missouri liquidation proceeding for claims Martin paid out to Wally Byam Club members between 1983 and 1985. Those claims are still pending.

In May 1988, Martin brought this action in Louisiana state court against the domestic reinsurance companies, seeking to recover directly from them for the claims it paid out to Wally Byam Club members between 1983 and 1985, for which it did not receive reimbursement from Transit. The reinsurers removed the action to the United States District Court for the Eastern District of Louisiana, and moved for dismissal or alternatively for summary judgment.

On June 7, 1989, the district court dismissed the action without prejudice on two independent grounds: (1) that the Uniform Insurers Liquidation Act, adopted by both Louisiana and Missouri, divests courts in Louisiana of jurisdiction over controverted claims regarding out-of-state insolvent insurers, and (2) that the litigation could not proceed in the absence of Transit's receiver, an indispensable party. The district court did not decide the merits of Martin's claim for direct reimbursement from the reinsurers. Martin then moved for reconsideration and a new trial, and the district court denied both motions. Martin now appeals the dismissal of its action.

## DISCUSSION

Both Missouri and Louisiana have adopted the Uniform Insurers Liquidation Act ("UILA"), governing the liquidation of insolvent insurance companies. La.Rev. Stat.Ann. §§ 22:757–763 (West 1978 & Supp.1990); Mo.Ann.Stat. §§ 375.950–990 (Vernon Supp.1988). Under the UILA, liquidation proceedings for insurance companies are properly conducted in the domiciliary state, the state in which the insolvent insurer is incorporated or organized. See La.Rev.Stat.Ann. §§ 22:757(5), :758–59. When the domiciliary state's court enters a liquidation order, the domiciliary receiver becomes vested with title to all assets of the insolvent insurer. La.Rev.Stat.Ann. § 22:758(B); see also Mo.Ann.Stat. § 375.954(2).

The UILA also provides, in pertinent part:

> Controverted claims belonging to claimants residing in this state may either (1) be proved in the domiciliary state as provided by the law of that state, or (2) if ancillary proceedings have been commenced in this state, be proved in those proceedings.

La.Rev.Stat.Ann. § 22:760(B); see also Mo. Ann.Stat. § 375.966(2). Hence, from the moment a receiver is appointed, all claims against the insolvent insurer must be presented either to the domiciliary receiver or to an ancillary receiver appointed in the reciprocal state. *Miner v. Punch*, 838 F.2d 1407, 1410 (5th Cir.1988).

The domiciliary state for Transit is Missouri, and that is where the liquidation order was entered. The parties agree that no ancillary proceedings have been commenced in Louisiana, which is a reciprocal state by virtue of having adopted the UILA. Therefore, Martin, a Louisiana claimant, must bring any controverted claims involving Transit's assets in the Missouri liquidation court.

Louisiana law recognizes that if a reinsurance contract specifies that the reinsurer intends to assume and carry out directly the ceding insurer's policy obligations or specifies that the reinsurer will pay some-

one other than the ceding insurer, then the insured or the specified payee can assert a claim directly against the reinsurer. La. Rev.Stat.Ann. § 22:941(B)(2)(a); *Arrow Trucking Co. v. Continental Ins. Co.,* 465 So.2d 691, 701 (La.1985). The reinsurance certificates in this case, however, do not contain such a direct payment provision; in fact, they specifically negate any obligation to parties other than Transit or its statutory successor.

Martin argues that the reinsurance proceeds which it claims in this action are not assets of Transit. According to Martin, the sole indication that the reinsurance proceeds are assets of Transit payable only to Transit's receiver is the presence of the insolvency clauses in the reinsurance certificates. But Martin contends that those insolvency clauses are invalid because they do not conform to the parties' intentions. Martin asserts that in the negotiations for placement of the reinsurance coverage, the parties contemplated that the certificates would be written to allow direct payment to Martin if Transit became insolvent. Martin complains that the district court did not consider evidence showing these intentions, such as the deposition testimony of Martin's former vice president describing the reinsurance negotiations. Under Martin's view, because the insolvency clauses are invalid as not conforming to the parties' intentions, Martin's claims thus are not claims to assets of Transit, the UILA does not apply to those claims, and consequently Martin can bring its claims in Louisiana directly against the reinsurers.

The insolvency clauses, on the other hand, indicate that the reinsurers should pay any proceeds to Transit's receiver. It is a common practice to include such insolvency clauses in reinsurance contracts for the very reason that the reinsurance may then be "treated as an asset of the ceding company against unearned premium reserves or as a deduction from liability in place of loss reserves." *Arrow Trucking,* 465 So.2d at 696, 699. The reason many insurers seek reinsurance is to bolster the loss reserves needed for large risks, without freezing a large amount of their assets. *See id.* at 695–97 (discussing the nature of reinsurance). Like most states, Louisiana and Missouri provide by statute that reinsurance can be treated as an asset or as a deduction from liability of an insurance company only if the reinsurance is payable without diminution because of the insolvency of the ceding insurance company. La. Rev.Stat.Ann. § 22:941(B)(2)(a); Mo.Rev. Stat. § 375.246; *see Arrow Trucking,* 465 So.2d at 699. An insolvency clause in the reinsurance contract satisfies this statutory requirement.

■■■ Moreover, under Missouri law, absent contrary provisions in a reinsurance contract, "the liability of the reinsuring company is solely to the reinsured company, or to its receiver in the event of its insolvency." *First National Bank of Kansas City v. Higgins,* 357 S.W.2d 139, 143 (Mo.1962). When an insurer becomes insolvent, "the proceeds of reinsurance are assets to be distributed generally amongst its creditors". *Homan v. Employers Reinsurance Corp.,* 345 Mo. 650, 136 S.W.2d 289, 296 (1939); *see also Ainsworth v. General Reinsurance Corp.,* 751 F.2d 962, 965 (8th Cir.1985) (applying Missouri law).

The insolvency clauses give Transit's receiver a colorable claim to the reinsurance proceeds as assets of Transit. Indeed, Transit's receiver has taken the position that Martin is seeking to recover assets of the receivership for Transit and that Martin's action violates the Missouri court's injunction order, which enjoins interference with the receiver's rights to Transit's assets. *See* Exhibit 7 in support of Defendants' Motion to Dismiss or Alternatively Motion for Summary Judgment. Thus, both the receiver and Martin claim entitlement to the reinsurance proceeds.

Because the receiver has at least a colorable claim to possession of the reinsurance proceeds based on the insolvency clauses, the reinsurers would potentially be exposed to double liability if required to litigate in both Missouri and Louisiana. For example, Lancer, which has already paid reinsurance proceeds to the receiver upon the receiver's demand, could potentially be held liable to Martin as well, if the court in Louisiana

retains jurisdiction. *See, e.g., Ainsworth,* 751 F.2d 962, 966 (reinsurer held liable to receiver of insolvent insurer even though reinsurer had already settled claim with insured). The district court found that the receiver would inevitably "make demand pursuant to the reinsurance contracts for the reinsurance due under the Certificates at issue," regardless of the outcome of this litigation.

Any genuine issue of material fact that Martin may have shown as to the intentions of the parties to the reinsurance contracts should be resolved in the Missouri state court. The insolvency clauses in the contracts indicate that the reinsurance proceeds are assets of Transit, to which only the receiver has any rights and which must be claimed in the Missouri liquidation court. Hence, any challenge to the validity of the insolvency clauses should also be brought in the Missouri liquidation court, not in federal court in Louisiana.[4]

Martin's reliance on *Great Atlantic Life Ins. Co. v. Harris,* 723 S.W.2d 329, 333–34 (Tex.App.—Austin 1987, writ dism'd), is misplaced. In that case, the court declined to construe an insolvency clause as giving the receiver of UBL, an intermediate reinsurer, authority to collect funds from SNL, its reinsurer, because the record as a whole showed that the parties intended SNL to be the ultimate reinsurer of the ceding insurer and UBL was merely passively interposed between the two. Any relevance that *Great Atlantic* may have to the ultimate disposition of the merits of Martin's claims does not affect the question of which forum should decide the merits, since *Great Atlantic* was decided by a Texas court interpreting Texas law, and Texas has not adopted the UILA.

Although we agree with the district court that this case should be dismissed, we do not think dismissal should be based on lack of subject matter jurisdiction in the federal court. In dismissing for lack of jurisdiction, the district court relied on *Insurance Affiliates, Inc. v. O'Connor,* 522 F.Supp. 703, 706 (D.Col.1981), in which the court dismissed a similar action for lack of

subject matter jurisdiction. Several other courts, however, have held that although a federal court may have jurisdiction to hear claims involving insolvent insurers that are in state court liquidation proceedings elsewhere, the court should abstain from exercising its jurisdiction, on *Burford*-type abstention grounds. *See Burford v. Sun Oil,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (A federal court should abstain from exercising jurisdiction where to do so would interfere with a specialized, unified state court system of adjudication designed to avoid inconsistent adjudication of claims arising from a comprehensive, detailed, and complex regulatory scheme in a subject area involving state law.).

In *Grimes v. Crown Life Ins. Co.,* 857 F.2d 699 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989), the Tenth Circuit held that even though the federal court had jurisdiction over a suit for declaratory judgment brought by a receiver, the court should have abstained on *Burford* grounds. The reinsurance issues involved in *Grimes* were issues relegated to state law. The McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15, did not remove diversity jurisdiction from the federal courts in insurance matters, but "encourages the states to formulate their own systems to regulate insurers doing business in their states. Therefore, in instances where states have responded to this congressional policy by formulating complex and specialized administrative and judicial schemes to regulate insurers, especially the liquidation of insolvent insurers," the federal court should abstain from exercising jurisdiction in disputes occurring in the larger context of state liquidation proceedings. *Grimes,* 857 F.2d at 703.

In *Lac D'Amiante du Quebec v. American Home Assur. Co.,* 864 F.2d 1033 (3d Cir.1988), the Third Circuit held that *Burford*-type abstention was required where an insured brought a claim in federal court against one of its insurers which was in liquidation proceedings in another state. *See also Law Enforcement Ins. Co. v. Corcoran,* 807 F.2d 38 (2d Cir.1986), *cert.*

---

**4.** Martin has already filed proofs of claim in the Missouri liquidation proceeding.

*denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987) (*Burford*-type abstention was appropriate in action in which insurer claimed reimbursement from insolvent reinsurer's liquidator); *Crist v. J. Henry Schroder Bank & Trust Co.,* 696 F.Supp. 981 (S.D.N.Y.1988) (the court dismissed, on *Burford* abstention grounds, a counterclaim involving a reinsurance contract dispute against Transit's receiver in an action brought by the receiver to vindicate its right to draw on letters of credit that had been issued in favor of Transit).

Unlike the cases cited above, the present case does not involve claims brought by or against the involvent insurer or its receiver. Nonetheless, because Martin's claims involve what are, on their face, assets of Transit owned solely by the receiver, those cases support abstention here.

In *Lac D'Amiante,* the Third Circuit expressly declined to address the ground upon which the district court in the present case based its dismissal—that a federal court in a diversity case in a reciprocal state must defer under the UILA to a domiciliary state liquidation proceeding because the reciprocal state's court would so defer. *Lac D'Amiante,* 864 F.2d at 1048–49. We also decline to address this ground because we find *Burford*-type abstention to be a valid ground for dismissal. The states of Louisiana and Missouri have adopted virtually identical comprehensive schemes for the liquidation of insolvent insurance companies, and thus have identical interests in preserving a unified forum for adjudicating claims against the estates of such companies. In addition, Martin's claim will be governed exclusively by provisions of state law addressing reinsurance. Therefore, it is appropriate to abstain on *Burford* abstention grounds.

The parties in this case did not discuss absention in the district court proceedings. Where *Burford*-type abstention is appropriate, however, it can be ordered on appeal even if not raised in the trial court. *Grimes v. Crown Life Ins. Co.,* 857 F.2d 699, 707 (10th Cir.1988). Missouri's comprehensive scheme for the regulation of insurance companies and their liquidation

under the UILA, the evidence of the Missouri court proceeding, and the reinsurance contracts together provide a sufficient basis for declining to exercise jurisdiction on *Burford*-type abstention grounds.

## CONCLUSION

According to Martin, the alleged invalidity of the insolvency clauses in the reinsurance contracts precludes application of the UILA. But since the insolvency clauses indicate that the reinsurance proceeds are assets of Transit, to which only the receiver has any rights and which must be claimed in the Missouri liquidation court, any challenge to the validity of the insolvency clauses should also be brought in the Missouri liquidation court. Because we find that dismissal was appropriate on abstention grounds, we find it unnecessary to address the alternative ground for the district court's judgment, that the receiver was an indispensable party who could not be joined. We AFFIRM the judgment of the district court dismissing this action.