961 F.2d 1576
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David J. DYKHOUSE, Commissioner of Insurance, as
Receiver/Liquidator for Cadillac Insurance Company
in Liquidation, Plaintiff-Appellee,
v.
CORPORATE RISK MANAGEMENT CORPORATION, MIH Consultants, and
Martin Hoffman, Defendants-Appellants.
 No. 91-1646.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1992.
 
 Before RALPH B. GUY Jr. and BATCHELDER, Circuit Judges, and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 In this diversity action, defendants-appellants, Corporate Risk Management Corporation, MIH Consultants, and Martin Hoffman (collectively "CRM"), appeal the district court's dismissal of their counterclaims against plaintiff-appellee, David Dykhouse, Commissioner of Insurance ("Commissioner"), as Receiver/Liquidator for Cadillac Insurance Company ("Cadillac") in Liquidation. Although we agree that the district court should not have adjudicated the counterclaims, we reverse the dismissal of the counterclaims and remand to enable the district court to abstain, under the Burford abstention doctrine, from adjudicating these counterclaims and to remand them to state court.
 
 I.
 
 2
 In 1988 and 1989, CRM,[1] acting pursuant to managing general agency agreements as an agent for Cadillac, agreed to procure insurance business for Cadillac. As Cadillac's agent, CRM wrote policies, collected premiums, and paid claims on the policies. On July 7, 1989, Cadillac was placed into conservatorship by Order of the Michigan Circuit Court for the County of Ingham ("Receivership Court"), and the Acting Commissioner of Insurance was appointed Temporary Conservator of Cadillac. It is alleged that, when Cadillac's financial troubles became apparent in October of 1989, CRM refused to pay claims on policies or to return premiums to policyholders. These actions by CRM are the basis for the Complaint filed by the Acting Commissioner against CRM on October 10, 1989.[2]
 
 
 3
 On November 9, 1989, CRM removed this case to the United States District Court for the Eastern District of Michigan on the basis of diversity of citizenship. On December 1, 1989, CRM filed an answer with counterclaim. On January 2, 1990, the Receivership Court entered an Order Granting Appointment of Permanent Liquidating Receiver, Permanent Injunction, and Related Orders Governing Liquidating Receivership ("Liquidation Order") by which the court placed Cadillac into liquidation and appointed the Acting Commissioner of Insurance as Receiver/Liquidator. On April 2, 1990, the Acting Commissioner filed a copy of the Liquidation Order in the United States District Court and sought a six-month stay of the federal action. The stay was granted on April 24, 1990.
 
 
 4
 The stay was lifted on July 3, 1990, and CRM filed an Answer to First Amended Complaint, Affirmative Defenses, and Counterclaims ("Second Amended Counterclaims") and Amended Counterclaims, on August 20, 1990, and November 20, 1990, respectively.[3] On December 5, 1990, the Acting Commissioner moved to dismiss CRM's counterclaims. Following briefing by the parties, on January 16, 1991, the Receivership Court entered an Order Amending Nunc Pro Tunc Original Order of Liquidation and Appointment of Commissioner of Insurance as Receiver/Liquidator ("Amended Liquidation Order"). The Amended Liquidation Order enjoined all actions from being "commenced or further prosecuted ..." against Cadillac or the Acting Commissioner of Insurance and enjoined all persons from bringing an action "without first obtaining the authorization of this Court."
 
 
 5
 On January 17, 1991, the district court held a hearing on the motion to dismiss CRM's counterclaims, at the conclusion of which, the district court stated that it was prepared to dismiss the counterclaims, and on January 25, 1991, an Order was entered dismissing the counterclaims as being contrary to the Amended Liquidation Order and to Michigan law and public policy. On May 9, 1991, the district court entered an Order granting CRM's motion for certification pursuant to Fed.R.Civ.P. 54(b).
 
 II.
 
 6
 CRM first argues that under Michigan statutory and case law, because the counterclaims were filed before the conservatorship had been transformed by court order into a receivership, permission of the Receivership Court was not required prior to filing counterclaims. Second, CRM argues that an insurance agent has a right of setoff against an insurance company, thus entitling agents, including CRM, to obtain a preference as against creditors involved in the liquidation proceeding. Finally, CRM emphasizes that, although Chapter 81 of the Michigan Insurance Code would bar CRM's counterclaims without permission of the Receivership Court, Chapter 81 did not take effect until after CRM went into delinquency proceedings and is, therefore, inapplicable.
 
 
 7
 The Commissioner claims that the McCarran-Ferguson Act, 15 U.S.C. Sections 1011-12,[4] together with the Michigan insurance statutes and case law, divested the district court of subject-matter jurisdiction. Alternatively, he argues that even if the district court had jurisdiction, the abstention doctrine set forth by the United States Supreme Court in Burford v. Sun Oil Co., 319 U.S. 315 (1943), required it to abstain from exercising that jurisdiction. Next, the Commissioner argues that Michigan case law and statutory law, the Receivership Court Order, and public policy prohibit the continued prosecution of CRM's counterclaims. Finally, he contends that CRM has waived its right to raise a claim for setoff against any claims made by the Commissioner[5] or, alternatively, that there is no right of an insurance agent holding premiums in trust to obtain a preferential right to setoff against an insolvent insurer.
 
 
 8
 We address first the issue of whether the district court should have abstained, under the Burford abstention doctrine, from adjudicating CRM's counterclaims. We hold that the district court should have abstained.[6]
 
 
 9
 At the January 17, 1991, hearing on the Commissioner's motion to dismiss the counterclaims, the district court indicated that it was dismissing the counterclaims because it believed a Michigan court would do so under the circumstances, because not to do so would frustrate the Michigan statutory insurance scheme,[7] and because to dismiss was consistent with the Amended Liquidation Order entered by the Receivership Court the previous day. The district court's January 25, 1991, Amended Order simply referenced the reasons given at the earlier hearing. However, in its May 9, 1991, Order granting Rule 54(b) certification,[8] the district court stated that, "[b]ased upon the order of the [Receivership Court], this court granted plaintiff's motion and dismissed defendants' counterclaims for lack of jurisdiction " (emphasis added). It is thus unclear whether the district court dismissed the counterclaims on the basis of a perceived lack of jurisdiction[9] or on discretionary grounds.
 
 
 10
 We hold that the district court was correct in declining to proceed on CRM's counterclaims; however, for the reasons set forth below, we find that the court should have abstained from exercising its jurisdiction and remanded the counterclaims to the state court.[10]
 
 
 11
 The Burford abstention doctrine originated with the case of Burford v. Sun Oil Co. In Burford, the Supreme Court held that it was proper for a federal court to abstain from deciding a case that involved "Texas' complex oil and gas regulations." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 360 (1989) ("NOPSI "). In NOPSI, the Supreme Court recently and succinctly set forth the two situations in which Burford abstention would be appropriate:
 
 
 12
 Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River Water Conservation Dist. v. United States, supra, at 814.
 
 
 13
 NOPSI, 491 U.S. at 361.
 
 
 14
 This court implicitly has recognized, in dicta, that Burford abstention is appropriate to avoid "considering questions regarding state liquidation proceedings in order to protect the state's substantial interests in this regard," provided that no direct federal question is involved. Fabe, 939 F.2d at 347. In addition, the Second, Third, Fifth, Seventh, and Tenth Circuits all have held Burford abstention appropriate in cases involving analogous state insurance company liquidation proceedings.[11]
 
 
 15
 One court has identified the following factors as relevant to a determination of whether Burford abstention is appropriate in a given case: 1) whether the cause of action is exclusively federal; 2) "whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry ...;" 3) "whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues ...;" and 4) "whether difficult or unusual state laws are at issue...." Grimes, 857 F.2d at 704-05.
 
 
 16
 We conclude that both the Supreme Court's articulation in NOPSI of the rationale behind Burford and the Tenth Circuit's four-factor test in Grimes point to abstention in the present case. First, all the counterclaims in this diversity action are based on state law. Second, a determination by the district court that CRM is entitled to recover on its counterclaims would directly affect the ability of creditors of Cadillac to recover under the insurance liquidation procedure. Third, Michigan has provided for specialized state liquidation proceedings that would be disrupted by the continued prosecution of the counterclaims in the federal action. Finally, Michigan law regarding the validity of a counterclaim filed during the pendency of a conservatorship, as opposed to a receivership, is unclear. Burford abstention, therefore, is proper in the present case.[12]
 
 III.
 
 17
 For the foregoing reasons, this case is reversed and remanded to enable the district court to abstain, under the Burford abstention doctrine, from adjudicating CRM's counterclaims and to remand the counterclaims to the Receivership Court.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge, sitting by designation
 
 
 [1]
 Corporate Risk Management Corporation and MIH Consultants, Inc. are New York corporations owned by Martin Hoffman, the third defendant
 
 
 [2]
 The Commissioner's Third Amended Complaint, filed on October 8, 1990, alleged claims based on breach of contract, breach of fiduciary duty, breach of constructive and/or express trust, conversion, fraud, and accounting. The Complaint also sought a declaratory judgment that a Managing Agency Agreement between Cadillac and CRM was invalid, in whole or in part
 
 
 [3]
 According to the docket entry for November 20, 1990, the Amended Counterclaims merely adopted the Second Amended Counterclaims. The Second Amended Counterclaims, none of which were based on federal law, essentially alleged that Cadillac owed CRM for overpayments and for money due CRM under various theories of recovery
 
 
 [4]
 This court has stated that the purpose of the McCarran-Ferguson Act is "to protect the dominion of the states over the 'existing and future ... systems for regulating and taxing the business of insurance." Fabe v. United States Dep't of the Treasury, 939 F.2d 341, 344 (6th Cir.1991) (quoting, in part, Prudential Ins. Co. v. Benjamin, 328 U.S. 408 (1946))
 
 
 [5]
 In its March 7, 1991, Order denying CRM's motion for reconsideration, the district court stated that, by having failed to raise legal arguments prior to the dismissal of the counterclaims, CRM waived its right to raise these arguments for the first time in a motion for reconsideration. One of the arguments CRM made in its motion for reconsideration was that it was entitled to a preferential setoff. Presumably, the district court found this to be one of the arguments waived by CRM. A claim raised for the first time in a motion for reconsideration is deemed waived. See American Meat Inst. v. Pridgeon, 724 F.2d 45, 47 (6th Cir.1984); see also Manor Healthcare Corp. v. Guzzo, 894 F.2d 919, 922 n. 4 (7th Cir.1990). However, at the January 17, 1991, hearing on the motion to dismiss the counterclaims, CRM did raise, albeit briefly, the setoff argument. Appellee's Brief, Exhibit E, at 9-10 (transcript of hearing on motion to dismiss counterclaims). Therefore, were it necessary to decide this issue, we would find that the setoff argument was not waived. In light of our disposition of this case, however, it is unnecessary to decide this issue
 
 
 [6]
 We note that, although Burford abstention was raised for the first time on appeal, this does not preclude this court from considering this issue. Burford abstention can be raised for the first time by the parties on appeal or even sua sponte. Martin Ins. Agency v. Prudential Reinsurance Co., 910 F.2d 249, 255 (5th Cir.1990); Grimes v. Crown Life Ins. Co., 857 F.2d 699, 706-07 (10th Cir.1988); Chandler v. Omnicare/The HMO, Inc., 756 F.Supp. 187, 189 (D.N.J.1990)
 
 
 [7]
 Chapter 78 of the Michigan Insurance Code, entitled "Liquidations and Receiverships," largely governs the Cadillac receivership proceeding. Sections 7836 through 7868 of Chapter 78, which have been repealed, are a codification of the Uniform Insurers' Liquidation Act. Chapter 81 of the Michigan Code, which replaced Chapter 78, became effective on January 1, 1990, but does not apply by its terms to the present action. As the Commissioner points out, and as CRM conceded at the January 17, 1991, hearing, CRM's counterclaims clearly would be barred under Chapter 81
 
 
 [8]
 Certification under Federal Rule of Civil Procedure 54(b), which was granted by the district court in this case, requires a court to make "an express determination that there is no just reason for delay and [give] an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). Although Rule 54(b) certification is not intended to be granted routinely, substantial deference will be given the district court decision to certify under Rule 54(b), provided that the court "undertook to weigh and examine the competing factors involved in the certificat[ion] decision." Knafel v. Pepsi Cola Bottlers of Akron, Inc., 850 F.2d 1155, 1159 (6th Cir.1988) (quoting Solomon v. Aetna Life Ins. Co., v. Thyssen Envtl. Sys., Inc., 807 F.2d 1279, 1283 (6th Cir.1986) (setting forth nonexhaustive list of factors for district court to consider in making Rule 54(b) determination)
 In the present case, the district court articulated several factors favoring certification, including a desire to avoid having this court review the merits of this case twice and a determination that, because the district court never reached the merits of this case, certification would not lead to piecemeal appeals. We defer to the district court's determination that certification was proper and, therefore, find that we have jurisdiction over this "final decision" under 28 U.S.C. Section 1291.
 
 
 [9]
 Although the McCarran-Ferguson Act indicated Congress's intent to leave regulation of the insurance business largely to the states, there is no indication that Congress thereby intended to divest the federal courts of jurisdiction over state insurance claims. Courts repeatedly have held that federal courts do have jurisdiction over these claims. See, e.g., Property and Casualty Ins. Ltd. v. Central Nat'l Ins. Co. of Omaha, 936 F.2d 319, 321 n. 3 (7th Cir.1991); Martin Ins. Agency, 910 F.2d at 254 (action brought in federal court against insolvent insurer not properly dismissed for lack of jurisdiction; instead, use Burford abstention); Grimes, 857 F.2d at 702 (McCarran-Ferguson Act did not intend to divest federal courts of jurisdiction in diversity cases), cert. denied, 489 U.S. 1096 (1989)
 
 
 [10]
 Under Burford, a court can order remand rather than outright dismissal to prevent delay. Lac D'Amiante du Quebec Ltee v. American Home Assurance Co., 864 F.2d 1033, 1049 (3d Cir.1988); Grimes, 857 F.2d at 707 n. 11; Corcoran v. Ardra Ins. Co., Ltd., 842 F.2d 31, 36-37 (2d Cir.1988) ("[W]hen the district court may properly abstain from adjudicating a removed case, it has the power to remand the case to state court."); Corcoran v. Universal Reinsurance Corp., 713 F.Supp. 77, 82 (S.D.N.Y.1989)
 
 
 [11]
 E.g., Ardra Ins. Co., 842 F.2d at 37; Lac D'Amiante, 864 F.2d 1033; Martin Ins. Agency, 910 F.2d at 254-55; Hartford Casualty Ins. Co. v. Borg-Warner Corp., 913 F.2d 419, 424-27 (7th Cir.1990); Grimes, 857 F.2d 699
 One court, construing the language in NOPSI regarding the applicability of Burford to "a federal court sitting in equity ..." (emphasis added), has declined to apply Burford to a claim for money damages. See University of Md. v. Peat Marwick Main & Co., 923 F.2d 265, 271-72 (3d Cir.1991). However, as this same court acknowledged, id. at 271, the language in NOPSI was dicta. See Commissioner of Ins. of N.J. v. Mid-American Gen. Agency, Inc., 1991 WL 213899, at 2-3, 1991 U.S.Dist. LEXIS 15214, at 5-6 (D.N.J.1991) (noting that the Third Circuit had cautioned against reading too much into the language in NOPSI and finding Burford abstention appropriate in a case involving money damages.
 
 
 [12]
 We acknowledge that because the district court will retain jurisdiction over the Commissioner's claims, but not CRM's counterclaims, one goal of abstention, viz., avoiding piecemeal litigation, will not be realized. Nonetheless, we believe that other factors decisively weigh in favor of abstention in this case