POLITZ, Circuit Judge,
dissenting;
My colleagues in the majority have issued a forceful opinion from which I respectfully must dissent.
My colleagues conclude that the district court abused its discretion by abstaining under Burford[1] because the nature of Webb’s claims precludes abstention. According to the Burford abstention doctrine, *706 a federal court may abstain and remand a case to state court “only where the relief being sought is equitable or otherwise discretionary.” [2] After determining that •Webb’s claim for quantum meruit is an action at law — a determination that in part spurs my dissent — the majority concludes that the district court was not sitting in equity and did not possess discretion to grant or deny relief. Thus, they opine, the district court acted outside the strictures of the doctrine by abstaining. I dissent, concluding that quantum meruit more appropriately should be considered an equitable action, and fully convinced that the district court’s abstention order should be affirmed.
I.
The nature of quantum meruit is, indeed, “complex[ ].”[3] The majority describes quantum meruit as an action at law — a legal cause of action seeking money damages — and cites numerous cases in support thereof. There is contrary jurisprudence describing quantum meruit as an equitable action.[4] “The battle of the string citations [, however,] can have no winner.”[5] Thus, reflection on the Supreme Court’s discussion in Quackenbush v. Allstate Insurance Company[6] is appropriate.
Congress imposed upon the federal courts a duty to exercise their jurisdiction, but the statutes conferring jurisdiction were enacted against a background of traditional principles that included a court’s ability to abstain in certain circumstances.[7] Thus, “it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it is asked to employ its historic powers as a court of equity.”[8] And more specifically, “the power to dismiss under the Burford doctrine ... derives from the discretion historically enjoyed by courts of equity.”[9] Thus, the appropriate issue to be resolved is whether courts of equity historically heard claims of quantum meruit.
Given the Supreme Court’s historical emphasis, it is my perception that the focus should be upon the origin of the relief and its position at the time the federal judicial system was created, not how the cause of action has since evolved.[10] The *707 roots of quantum meruit are in the courts of equity;[11] claims for quantum meruit appeared in those courts before the cause of action could be pursued at law. Claims for quantum meruit were pursued in the courts of equity at the birth of our judicial system.[12] Thus, despite some indications, historically speaking, that quantum meru-it was a legal cause of action,[13] I am not prepared to dispositively rule that quantum meruit is a legal cause of action.
II.
Having personally concluded that a federal court sits in equity when hearing a claim for quantum meruit,[14] I continue with the Burford analysis. The Supreme Court describes the Burford abstention doctrine as follows:
Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.[15]
The district court abstained under the second noted circumstance,[16] and, in doing so, in my opinion, it did not abuse its discretion.
Prior to Quackenbush, this court and other courts consistently had approved Burford abstention in actions involving an insurance company that, in turn, was in *708 volved in ongoing state delinquency proceedings.[17] Being persuaded that the holding of Quackenbush does not torpedo the district court’s decision to abstain, I briefly reflect only on the remaining analysis because of the solid background of precedent upholding Burford abstention in similar situations.
A.
Texas’ regulation of the insurance industry is “a matter of substantial public concern.” Congress manifestly considers such regulation a matter of public concern.[18] Precedent teaches that this concern is substantial.[19]
B.
Texas has established a coherent policy regulating the insurance industry. It has formulated a complex and comprehensive scheme involving numerous actors, including the Department of Insurance, the Commissioner of Insurance, as well as the District Court of Travis County. Under Texas law, the governor, with the advice and consent of the senate, appoints a Commissioner of Insurance who is charged with the primary responsibility of administering, enforcing, and executing provisions of the Insurance Code.[20] Decisions by the Commissioner may be challenged by interested parties in the District Court of Travis County, “and not elsewhere.”[21] The Attorney General for the State of Texas is charged with representing and advising the Commissioner in all legal matters.[22]
Texas’ comprehensive scheme also quite appropriately covers matters concerning those insurance companies that become insolvent.[23] Particular financial considerations must be met before an insurance company may be incorporated in Texas,[24] and the Department of Insurance is charged with monitoring the continuing performance of insurance companies.[25] If the department determines that an insurance company’s financial position has dipped below a prescribed level, the Commissioner must notify the company of this determination and provide the company with a list of requirements, compliance with which will absolve the earlier departmental determination.[26] If, after a specified period of time, the company has not met the requirements set forth by the Commissioner and other criteria have not been met, the Commissioner must notify the Attorney General who may apply to any Travis County court for remedial action, including the appointment of a receiv-e *709 rr[27] Texas law charges an appointed receiver with the duty of conducting the business of the delinquent insurer and conserving the assets and protecting the rights of policyholders and claimants.[28] Additionally, Texas law specifies where the proceeds collected by the receiver shall be held.[29] Finally, Texas law specifies' that the exclusive venue for delinquency proceedings shall be in Travis County.[30] It is abundantly clear that Texas indeed has established a coherent policy in this area.
C.
I find no basis for suggesting that the district court abused its discretion in concluding that federal review of the questions presented in this case and similar cases would be disruptive of Texas’ efforts to effectuate its coherent policy. Congress delegated the regulation of the business of insurance to the states,[31] and Texas has created a complex and comprehensive scheme to do exactly that. The Texas legislature has concentrated judicial review of insurance proceedings in Travis County, and consequently those courts, like the Department of Insurance and the Commissioner of Insurance, have developed a specialized knowledge regarding these proceedings.[32] In my view, reversing the district court and allowing this case to continue in federal court inappropriately “usurp[s]” Texas’ control over the liquidation proceeding.[33]
Finally, Texas requires the receiver to “take such steps as may be necessary to conserve the assets ... for the purpose of liquidating ... the affairs of the insurer.” [34] By holding that the federal district court possessed jurisdiction over this case, the majority potentially sacrifices one of the chief purposes of the Texas regulatory scheme by effectively requiring the “dissipation of the insolvent company’s funds”[35] likely to result from litigation conducted outside Travis County and away from the court with the responsibility for this insurance company salvage operation.
Splintering a portion of this on-going proceeding and insisting on jurisdiction herein for the federal district court unduly threatens the scheme enacted by Texas as specifically authorized by Congress. As our courts have so forcefully noted: “‘in instances, where states have ... formu-lat[ed] complex and specialized administrative and judicial schemes to regulate insurers, especially the liquidation of insolvent insurers,’ the federal court should abstain from exercising jurisdiction in disputes occurring in the larger context of state liquidation proceedings.”[36] I am in absolute agreement with this statement.
*710 III.
In sum, we should conclude that quantum meruit historically was, and therefore should be deemed to be, an equitable action and that the district court did not abuse its discretion in abstaining under ■Burford. I would affirm the judgment appealed.

. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

. Supra, at 703. Cf. 5 Alan Linton Corbin, Corbin on Contracts § 1103, .at 557 (1964) ("The remedy of restitution [, a broad remedy within which quantum meruit has been classified,] cannot properly be described as either 'legal' or 'equitable' in any narrowly restricted signification of those terms. It was once a remedy that was created and applied by both the Judges and the Chancellors....").

. See supra, at 707 n. 13; FDIC v. Plato, 981 F.2d 852, 858 n. 14 (5th Cir.1993) (treating quantum meruit damages as equitable relief); see also United States Gypsum Co. v. National Gypsum Co., 352 U.S. 457, 478, 77 S.Ct. 490, 1 L.Ed.2d 465 (1957) (Black, J., dissenting) (hinting that quantum meruit is an action in equity by stating that recovery under that theory runs counter to the equitable doctrine of "unclean hands”). But see Mertens v. Hewitt Assocs., 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("Money damages are, of course, the classic form of legal relief.”); cf. Reich v. Continental Cas. Co., 33 F.3d 754, 756 (7th Cir.1994) (dictum) (In seeking restitution, "[plaintiff] was seeking not a profit, but merely a receipt, an insurance premium, net of some expenses; to call this a 'profit,' it could be argued, would convert every suit for the price of a contract into a suit for restitution, contrary to the law.”).

. Smith v. Wade, 461 U.S. 30, 93, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (O'Connor, J„ dissenting).

. 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

. Id., at 716-17, 116 S.Ct. 1712.

. Id., at 717, 116 S.Ct. 1712 (internal quotations omitted).

. Id., at 727-28, 116 S.Ct. 1712.

. It appears that courts competed for jurisdiction, see John P. Dawson et al„ Cases and Comment on Contracts 107 (6th ed. 1993) ("Since judges derived their income from litigants' fees, it is not surprising that competí *707 tion for judicial business developed so emphasis on the evolution of the cause of action does not seem appropriate.

. James Barr Ames, Lectures on Legal History 156 (1913).

. Morton J. Horwitz, The Historical Foundations of Modem Contract Law, 87 Harv. L.Rev. 917, 934 (1974) ("As late as the turn of the century, it was also the prevailing practice in America to sue in indebitatus assumptsit for an express contract and for counts in both indebitatus and quantum meruit to be ‘usually joined in the declaration; so that on failure of proof of an express debt or price, the Plf. may resort ad debitum equitatis,' that is, to an equitable action in quantum meruit.”) (footnote omitted, italics added) (quoting American Precedents of Declarations 95 (B. Perham ed. 1802)).

. See J.L. Barton, Contract and Quantum Meruit: The Antecedents of Cutter v. Powell, 8 J. Legal Hist. 48 (1987); Horwitz, supra note 12, at 936 (discussing the jury's power to set a reasonable price in quantum meruit); see also Restatement of Restitution: Quasi Contracts and Constructive Trusts § 4 cmt. e, at 21 (1937) (“Although ordinarily such money judgment is obtained by an action at law, a decree for money will sometimes be rendered by a court of equity.”).

. Besides quantum meruit, Webb also pursued causes of action for breach of contract and for suit on sworn account, but these legal claims do not undermine the conclusion that the district court was sitting in equity. Quackenbush, 517 U.S. at 730, 116 S.Ct. 1712 ("We have not strictly limited abstention to equitable cases, ... but rather have extended the doctrine to all cases in which a federal court is asked to provide some form of discretionary relief.”) (internal quotations and citations omitted).

. New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal quotations and citations omitted).

. Webb v. B.C. Rogers Poultry, Inc., No. A-98-CA-005-SS (W.D.Tex. Feb. 19, 1998) ("Abstention is appropriate in this case, for if this Court were to exercise federal jurisdiction, it could well interfere with the State of Texas' efforts to effect a coherent policy on a matter of public concern, that is, the collection of assets of an insolvent insurer through a state district court receivership proceeding wherein the state district court retains continuing jurisdiction over the liquidation proceedings. Failure to abstain could lead to removal of cases to federal court and possible changes of venue, leaving the receiver facing litigation in several forums and under different circumstances. This would be detrimental to the overall scheme of the liquidation proceedings in Texas when an insurance company becomes insolvent.”).

. Munich Am. Reins. Co. v. Crawford, 141 F.3d 585, 589 n. 2 (5th Cir.1998) (collecting cases), cert. denied, - U.S. -, 119 S.Ct. 539, 142 L.Ed.2d 448 (1998).

. 15 U.S.C. § 1011 ("Congress hereby declares that the continued regulation ... by the several Slates of the business of insurance is in the public interest....”).

. See Martin Ins. Agency, Inc. v. Prudential Reins. Co., 910 F.2d 249, 255 (5th Cir.1990) (necessarily finding the concern "substantial” because it was "appropriate to abstain on Burford abstention grounds”); see also Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co., 864 F.2d 1033, 1045 (3d Cir.1988) ("essential state concern”).

. Tex. Ins.Code Ann. Art. 1.09(a), (b).

. Tex. Ins.Code Ann. Art. 1.04(a).

. Tex. Ins.Code Ann. Art. 1.09-1 (a).

. See generally Tex. Ins.Code Ann. Arts. 21.28, 21.28-A; El Paso Elec. Co. v. Texas Dep’t of Ins., 937 S.W.2d 432, 434-35 (Tex.1996) ("Article 21.28 of the Texas Insurance Code sets forth a comprehensive scheme for the liquidation, rehabilitation, and reorganization of insolvent insurers.”); see also Tex. Ins.Code Ann. Art. 21.28 § 16 ("In the event of conflict between the provisions of this Article and the provisions of any existing law, the provisions of this Article shall prevail, and all laws, or parts of law, in conflict with the provisions of this Article, are hereby repealed to the extent of such conflict.”).

. Tex. Ins.Code Ann. Art. 2.02.

. Tex. Ins.Code Ann. Art. 1.10.

. Tex Ins.Code Ann. Art. 21.28-A.

. Tex. Ins.Code Ann. Art. 21.28-A.

. Tex. Ins.Code Ann. Art. 21.2'8 § 2(e).

. Tex. Ins.Code Ann. Art. 21.28 § 2(h) ("Except as provided by this subsection, all money collected by the receiver shall be forthwith deposited into the Texas Treasury Safekeeping Trust Company....").

. Tex. Ins.Code Ann. Art. 21.28 § 2(i) ("Exclusive venue of delinquency proceedings shall be in Travis County, Texas.”).

. 15 U.S.C. § 1012(a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.”). But see 15 U.S.C. § 1012(b) ("No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance....”).

. See Burford, 319 U.S. at 325-27, 63 S.Ct. 1098.

. Barnhardt Marine Ins., Inc. v. New England Int’l Surety of Am., Inc., 961 F.2d 529, 532 (5th Cir.1992).

. Tex. Ins.Code Ann. Art. 21.28 § 2(e) (emphasis added).

. Munich Am. Reins. Co., 141 F.3d at 593 ("[C]onsolidalion prevents the unnecessary and wasteful dissipation of the insolvent company's funds that would occur if the receiver had to defend unconnected suits in different forums across the country.”).

. Martin Ins. Agency, Inc., 910 F.2d at 254 (quoting Grimes v. Crown Life Ins. Co., 857 *710 F.2d 699, 703 (10th Cir.1988)); cf. Sierra Club v. City of San Antonio, 112 F.3d 789, 796 (5th Cir.1997) ("Burford abstention is particularly appropriate where by proceeding the district court would have risked reaching a different answer than the state institutions with greater interest in and familiarity with such matters.”) (internal quotations and citations omitted). True, the district court noted that "the case at bar may be a simple determination of what, if any, premium is owed by the defendants to the receiver acting through his appointed authority.” Webb v. B.C. Rogers Poultry, Inc., No. A-98-CA-005-SS (W.D.Tex. Feb. 19, 1998). Our precedent, nonetheless, reveals that "disruption” may stem either from unsettled law or from the application of settled law to complex, local facts. Wilson v. Valley Elec. Membership Corp., 8 F.3d 311, 314-15 (5th Cir.1993). And on the record before this court, I cannot conclude that the district court abused its discretion in abstaining.