OPINION OF THE COURT
Simons, J.
 The issue presented is whether plaintiff, the State Superintendent of Insurance acting as liquidator of an insolvent insurance company, can be compelled to arbitrate the *228 insolvent’s claims against a foreign reinsurer. It arises because defendant Ardra Insurance Company, Ltd., a Bermuda reinsurance corporation, and its principals seek to compel plaintiff to arbitrate Ardra’s liability to the insolvent, Nassau Insurance Company, for reinsurance proceeds allegedly due pursuant to three international reinsurance agreements containing arbitration clauses. Defendants claim that the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention) supersedes article 74 of the New York Insurance Law, which authorizes the Superintendent to sue on behalf of insolvent insurance companies, and requires the Superintendent to arbitrate with Ardra on Nassau’s behalf. We conclude that the Convention, as a United States treaty, preempts conflicting Federal and State law, but that it excepts the Superintendent from arbitration in this case and allows him to proceed against Ardra in the main action. Accordingly, we affirm the order of the Appellate Division.
I
Nassau Insurance Company was a New York corporation licensed by the Superintendent to conduct insurance business in New York. It was owned by defendants Jeanne S. DiLoreto and Richard A. DiLoreto, its president. In 1976, the DiLoretos established defendant Ardra Insurance Company, Ltd., a foreign reinsurance corporation under their exclusive ownership, which had its principal and only place of business in Hamilton, Bermuda. Jeanne DiLoreto served as president of Ardra. Between 1978 and 1982, Nassau and Ardra entered into three international reinsurance agreements. The agreements covered policies written by Nassau concerning commercial automobile liability, general liability, lawyers professional package liability, excess liability and personal injury protection benefits written under New York automobile statutory no-fault coverage. Pursuant to the contracts, Ardra assumed a substantial portion of the risk insured in each policy written by Nassau and in consideration Nassau paid Ardra $10,682,924.84 in reinsurance premiums. Each agreement contained a broad arbitration clause requiring extrajudicial resolution of any dispute between Nassau and Ardra.
Nassau subsequently became insolvent and, after efforts to rehabilitate the company failed, the Superintendent commenced a liquidation proceeding pursuant to article 74 of the *229 Insurance Law. In June 1984, Supreme Court appointed plaintiff liquidator and authorized him to take various actions to wind up Nassau’s affairs, including taking possession of property, collecting outstanding debts, paying claims arising under policies issued by Nassau, collecting reinsurance on those claims, and commencing necessary proceedings. Nassau’s corporate charter was forfeited and the company was dissolved.
Plaintiff entered into his duties and began to settle claims on Nassau policies. Ardra paid plaintiff reinsurance proceeds due on some of these claims but stopped doing so in February 1985. At that time, Richard DiLoreto sent a letter to the Superintendent stating that Ardra was repudiating the reinsurance agreements with Nassau because the Superintendent refused to allow Ardra’s representatives to participate directly in court proceedings involving third-party claims against Nassau’s insureds. In response, the Superintendent commenced this action seeking reinsurance balances allegedly owed by Ardra to Nassau and damages from the DiLoretos resulting from their purported use of "shell” corporations such as Ardra to obstruct recovery on Nassau’s obligations to its creditors and insureds. Defendants moved to dismiss the complaint and compel arbitration under the terms of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958, 21 UST 2517, TIAS No. 6997), a United States treaty, and provisions of the Federal Arbitration Act implementing it (9 USC § 201 et seq.).[1]
Supreme Court denied the motion, holding that the McCarran-Ferguson Act (15 USC § 1011 et seq.) which specifically permits States to regulate insurance companies, insulates plaintiff from the requirements of the Convention and the Federal Arbitration Act.[2] The Appellate Division affirmed, holding that arbitration was not required because various *230 exceptions in the Convention exempted the Superintendent from its provisions.
II
The threshold question is preemption. The Supremacy Clause provides that “all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land” (US Const, art VI, cl 2). Any Federal or State law that "prevents the Federal Government from 'speaking with one voice’ in international trade” must bow to superior authority (Japan Line v County of Los Angeles, 441 US 434, 453-454; see also, Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 631; Zschernig v Miller, 389 US 429, 441). If the Convention requires arbitration, it preempts provisions of the McCarran-Ferguson Act, the Federal Arbitration Act and the State Insurance Law empowering the Superintendent to litigate on behalf of an insolvent insurance company (see, Cooper v Ateliers de la Motobecane, 57 NY2d 408, 411-412 [proceeding to obtain attachment order prior to arbitration of dispute arising out of international agreement violates Convention]). The focus, therefore, must be on the Convention, not the Federal statutes, and whether the Superintendent is exempt from its provisions.
III
In 1958, 45 nations convened in New York under the auspices of the United Nations to resolve difficulties in existing international agreements and private law impairing international arbitration. Resolution was important not only to secure the several advantages available in domestic arbitration — speed, informality, economy, expertise of decisionmakers (see generally, Sablosky v Gordon Co., 73 NY2d 133, 138) — but more importantly to enact uniform standards for the enforcement of such contracts thus minimizing uncertainties in dealing with unfamiliar laws in several foreign jurisdictions (see, Scherk v Alberto-Culver Co., 417 US 506, 520, n 15; Cooper v Ateliers de la Motobecane, 57 NY2d, at 410, supra; Quigley, Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 70 Yale LJ 1049, 1051). To this end, the Convention subsequently adopted provides that the courts of acceding nations must recognize arbitration clauses contained in inter *231 national commercial agreements and the resulting arbitral awards (United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards, art II, If 1; art III, 21 UST, at 2519).
Although the United States attended and participated in the 1958 conference, it did not sign the treaty. The United States Senate gave its advice and consent to ratification 10 years later, in October 1968, and accession was delayed until enactment of amendments to the Federal Arbitration Act implementing the Convention in 1970 (9 USC § 201 et seq.; see, McMahon, Implementation of the UN Convention on Foreign Arbitral Awards in the US, 26 Arb J 65, 67). In acceding to the Convention, the Senate restricted the treaty’s application to commercial matters (see, 9 USC § 202; Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 639, n 21, supra).
Plaintiff’s first contention is that this limitation bars arbitration of the present dispute because he is acting as a fiduciary, implementing a statutory regulatory scheme at the direction of the Court, and that his activities do not constitute "commercial” matters (see, Matter of Knickerbocker Agency [Holz], 4 NY2d 245, 251). The commercial nature of the relationship is determined at the inception of the agreement, however, not at the time of enforcement and there can be little doubt that the original agreement between Nassau and Ardra arose "out of a legal relationship * * * considered as commercial” under domestic law (9 USC § 202; see, Island Territory of Curacao v Solitron Devices, 356 F Supp 1, 13, affd 489 F2d 1313).
Nevertheless, it is apparent that the drafters did not intend to compel arbitration in all cases involving international commercial disputes because the Convention excepts certain contracts from its terms. As Secretary of State Katzenbach noted in recommending accession to President Johnson and the Senate, these exceptions "provide substantial safeguards to American citizens against any misuse of the arbitration process” (Senate Doc E, 90th Cong, 2d Sess, at 4 [1968]).
The exceptions relevant to this case are found in article II of the Convention. They require recognition of an arbitral agreement only when it "concern[s] a subject matter capable of settlement by arbitration” and provide that the court of an acceding nation may refuse to refer disputing parties to arbitration if the international agreement "is null and void, inoperative or incapable of being performed” (United Nations *232 Convention, art II, ffff 1, 3, 21 UST, at 2519). These exceptions are implemented by examining the domestic law of an acceding nation (see, Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US, at 639, n 21, supra; see also, Quigley, op. cit., at 1064; Contini, International Commercial Arbitration: The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 8 Am J Comp L 283, 296; Smit, A-National Arbitration, 63 Tul L Rev 629, 631). In the United States statutes provide that insurance is generally a matter of State concern and that the laws of the individual States govern (McCarran-Ferguson Act, 15 USC §§ 1011, 1012 [b]; see also, Bankruptcy Code, 11 USC § 109 [b] [2] [which exempts insurance companies from its provisions]). Thus, in this case, the law to be applied in interpreting the exceptions is article 74 of the New York Insurance Law.
As a result of Nassau’s insolvency, and plaintiff’s substitution to liquidate its assets, the contractual parties and their relationship have changed. Nassau no longer exists. Plaintiff steps into its shoes, in the sense that he succeeds to its property, but he is a fiduciary, appointed by the court, subject to its exclusive jurisdiction and possessing only the powers authorized by the Legislature (see, Insurance Law art 74). He holds office as liquidator solely to protect the interests of policyholders, stockholders and the public and has no authority to pursue the commercial interests which motivated the original parties to conclude the reinsurance agreements (Insurance Law § 7417; see, Matter of Knickerbocker Agency [Holz], 4 NY2d 245, 250, supra).
Although the Legislature has granted the Superintendent plenary powers to manage the affairs of the insolvent and to marshal and disburse its assets, the statutory scheme does not authorize his participation in arbitration proceedings. Over 30 years ago this Court held, when examining an earlier version of the Insurance Law, that absent express authority to do so the Superintendent could not engage in arbitration when acting as a liquidator (see, Matter of Knickerbocker Agency [Holz], supra, at 251-253). Despite that ruling and periodic amendments to the Insurance Law, the Legislature has not granted the Superintendent the authority to arbitrate disputes. Under the statute’s provisions, the subject matter of the claims against Ardra must be litigated in Supreme Court. The arbitration clause is "incapable of being performed” (United Nations Convention, art II, 1[ 3), therefore, and the *233 claims are not "capable of settlement by arbitration” (art II, [| 1) under the applicable domestic law.
This interpretation is also supported by article V of the Convention which specifies when arbitral awards may be denied recognition. It provides that an award need not be enforced if "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country [where recognition and enforcement are sought]” (art V, fl 2 [a]). The practical result of the parallel provisions contained in articles II and V is to relieve the parties from having to proceed through a futile arbitration in which the resulting award would be unenforceable in New York because of the Supreme Court’s exclusive jurisdiction in liquidation matters (see, Matter of Knickerbocker Agency [Holz], 4 NY2d 245, supra).
These exceptions are properly construed to effect New York’s strong public policy concerns by maintaining Supreme Court’s exclusive jurisdiction over liquidation proceedings. Arbitrators are private individuals, selected by the contracting parties to resolve matters important only to them. They have no public responsibility and they should not be in a position to decide matters affecting insureds and third-party claimants after the contracting party has failed to do so. Resolution of such disputes is a matter solely for the Superintendent, subject to judicial oversight, acting in the public interest.
IV
We recognize strong policy concerns of international comity which enjoin us to enforce arbitration agreements when the Convention requires it (see, Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 629, supra; Scherk v Alberto-Culver Co., 417 US, at 516-517, supra). Moreover, it is the policy in New York to encourage resolution of disputes through arbitration, particularly conflicts arising in the context of international commercial transactions (see, Cooper v Ateliers de la Motobecane, 57 NY2d, at 411, supra).
The underlying concerns of the Convention are not implicated here, however. The DiLoretos were the principals of Ardra and Nassau and both companies were wholly owned by them. Nassau and the DiLoretos were New York residents and were amenable to process in New York, both personally and by designation of a New York agent to receive process, and the contracts specifically referred to New York law in various *234 clauses. Under the circumstances, the parties had reason to anticipate at the time the contracts were executed that New York law applied to them and to know from established precedent that arbitration was not an authorized remedy under article 74 of the Insurance Law in the event of Nassau’s insolvency (Matter of Knickerbocker Agency [Holz] supra). Thus, the case does not present an international merchant subjected to unfamiliar judicial proceedings and the vagaries of foreign law requiring us to exercise a "sensitivity to the need of the international commercial system for predictability in the resolution of disputes” (Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US, at 629, supra; see, Cooper v Ateliers de la Motobecane, 57 NY2d, at 410-411, supra).
We conclude, therefore, that although the reinsurance agreements fell within the broad terms of the Convention, plaintiff is excepted from arbitration because the arbitration clause and the dispute alleged to be subject to it are not capable of performance and settlement under the law of New York.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. Defendants removed the action to Federal court but the United States District Court for the Southern District of New York remanded the action to Supreme Court, holding that abstention principles required that the New York courts be provided an opportunity to rule on whether the UN Convention preempts the New York Insurance Law and requires the Superintendent to arbitrate with Ardra (Corcoran v Ardra Ins. Co., 657 F Supp 1223, appeal dismissed and petition denied 842 F2d 31).

. The relevant provision of the McCarran-Ferguson Act provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance * * * unless such Act specifically relates to the business of insurance” (15 USC § 1012 [b]).