**M. Diane KOKEN, Commissioner of Insurance for the Commonwealth of Pennsylvania, as Liquidator of American Integrity Insurance Company, Plaintiff,**

v.

**COLOGNE REINSURANCE (BARBADOS), LTD., Defendant.**

No. CIV. A. 1:CV–98–0678.

United States District Court, M.D. Pennsylvania.

Jan. 26, 1999.

William F. Costigan, Costigan Hargraves & McConnell, P.C., New York City, for M. Diane Koken.

Vincent J. Vitkowsky, Peter T. Maloney, Marc Santa Maria, Edwards & Angell, New York City, Michael J. Glasheen, McCarter & English, Philadelphia, PA, for Cologne Reinsurance (Barbados), Ltd.

*MEMORANDUM*

CALDWELL, District Judge.

I. *Introduction.*

M. Diane Koken, the insurance commissioner of the Commonwealth of Pennsylvania, filed this lawsuit in the Pennsylvania Com-

monwealth Court as the statutory liquidator of American Integrity Insurance Co., seeking damages and declaratory relief against Cologne Reinsurance (Barbados), Ltd. The suit arises from a reinsurance agreement American Integrity had with Cologne.

Cologne removed the case here on the bases of federal-question and diversity jurisdiction. We are considering two motions: (1) the Liquidator's motion to remand to state court, and (2) Cologne's motion to stay the action and compel arbitration.

## II. *Background.*

Defendant Cologne is a Barbados corporation engaged in the business of reinsurance; it accepts a transfer of risk from other insurance companies on policies the latter have issued. American Integrity, the subject of the liquidation, was a fire and casualty insurance company with its principal offices in Pennsylvania.

In 1990, Cologne and American Integrity entered into a reinsurance agreement to be effective April 1, 1990. For our purposes, we need only note that Cologne provided the reinsurance under a Coinsurance Agreement by which it accepted a portion of liability on each American Integrity policy. (Elgee affidavit on stay and arbitration, ¶ 3). The agreement contained a setoff clause, allowing one party to use the debt owing by the other to reduce its own debt to the other. The clause read as follows:

> Upon notice to the other party, the Company or the Reinsurer may offset any balance(s) owed to it by the other party, from premiums, allowances, claims, losses, loss adjustment expenses, or other amount(s) due from one party to the other under this Agreement.

(Exhibit A to Elgee affidavit, Article V to the Coinsurance Agreement).

In June 1992, American Integrity and Cologne executed "Amendment 3" to the Agreement, allowing American Integrity to withhold payments due to Cologne under the Coinsurance Agreement as security for Cologne's performance of the Agreement. In return, Cologne could require American Integrity to establish a trust account (the "Trust Account") in which the withheld funds would be placed. The Trust Account was established at First Fidelity Bank.

In December 1992, the Coinsurance Agreement was amended again by "Amendment 5." According to the Liquidator, Amendment 5 broadened the reinsurance to more types of American Integrity policies and increased the percentage of the reinsurance. At the same time, Cologne and American Integrity executed a Stop Loss Agreement by which American Integrity reinsured Cologne for some of the reinsurance Cologne had provided American Integrity. Additionally, the setoff provision of the Coinsurance Agreement was modified to allow the setoff of any debts between the parties, not just on the Coinsurance Agreement. In pertinent part, the setoff clause now read as follows:

> Upon notice to the other party, the Company or the Reinsurer may offset any balance(s) owed to it by the other party, from premiums, allowances, claims, losses, loss adjustment expenses, or other amount(s) due from one party to the other ....

(Exhibit A to Elgee affidavit, Article V of Amendment 5 to the Coinsurance Agreement). As noted, the original offset language finished this clause with the phrase "under this agreement." (*Id.*, original Article V to the Coinsurance Agreement). (According to the Liquidator, the modification allowed Cologne to setoff amounts it owed American Integrity under the Coinsurance Agreement by amounts American Integrity owed it under the Stop Loss Agreement.)

Amendment 5, like the original Coinsurance Agreement, also contained an arbitration provision. In relevant part, the arbitration provision in Amendment 5 reads as follows:

> All disputes and differences between the Company and the Reinsurer on which an amicable understanding cannot be reached shall be decided by arbitration at a site mutually agreed upon by both parties. The following procedures shall apply.

> Upon written request of either party ... each party shall choose an arbitrator and the two chosen shall select a third arbitrator....

All arbitrators shall be active officers of insurance companies and disinterested in the outcome of the arbitration....

....

The arbitrators shall interpret this agreement as an honorable engagement and not merely as a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law....

(Elgee affidavit, exhibit A, Article XI to amendment 5).

Under Pennsylvania law, Article V of the Insurance Department Act, 40 P.S. §§ 211–221.63 (Purdon & Purdon Supp. 1998–99), governs insurer liquidations and rehabilitations. Pursuant to the Article, the Liquidator petitioned the Pennsylvania Commonwealth Court, the state court that administers liquidation and rehabilitation of insolvent insurers, to put American Integrity into liquidation. On June 25, 1993, the court issued an order of liquidation. Among other things, the order placed all American Integrity assets, including contracts and rights of action, in the control of the Liquidator. It also ordered First Fidelity Bank not to disburse or transfer any funds from the Trust Account unless directed in writing by the Liquidator. According to the Liquidator, the $12 million in the account in June 1993 had grown to over $17 million in December 1997. (Daley affidavit, ¶ 19).

The Liquidator filed this lawsuit in the commonwealth court, alleging that Cologne had failed to make all payments due under the Coinsurance Agreement. The complaint sought the following relief. First, the Liquidator requested damages for breach of the Agreement. Second, she requested declaratory relief that under Pennsylvania insurance law Cologne could not invoke its right of setoff or enforce the Stop Loss Agreement. Third, she requested that the court disburse the Trust Account to her.

According to the Liquidator, Cologne owes about $25 million on the Coinsurance Agreement. This "asset" of the estate compares to only $37 million in American Integrity assets elsewhere, thus making this lawsuit, depending on its outcome, responsible for about 40% of the assets that will be available for American Integrity's creditors.

As noted, Cologne removed the suit here on the bases of diversity jurisdiction and federal-question jurisdiction. The latter basis for jurisdiction is the Federal Arbitration Act, 9 U.S.C. § 1–307; specifically, 9 U.S.C. § 201 which provides that the Convention on the Recognition of Foreign Arbitral Awards shall be enforced in the United States, including the Convention's requirement that arbitration agreements be honored.

## III. Discussion.

### A. The Liquidator's Motion to Remand.

The Liquidator has moved to remand this action to the commonwealth court on two grounds. First, she contends that the court should abstain from deciding this case and remand it to the commonwealth court under *Burford* abstention. Alternatively, she asserts we should abstain under *Colorado River* abstention.

#### 1. Burford Abstention.

In *Feige v. Sechrest*, 90 F.3d 846, 847 (3d Cir.1996), the Third Circuit stated the standard for abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Under *Burford* abstention, a district court should "decline to interfere with the proceedings or orders of state administrative agencies" when "timely and adequate state-court review is available" and either of the following two criteria is satisfied:

(1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Feige*, 90 F.3d at 847 (quoting *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir.1995))(quoting *New Orleans Pub. Serv., Inc. v. Council of*

*New Orleans*, 491 U.S. 350, 360–63, 109 S.Ct. 2506, 2514–15, 105 L.Ed.2d 298 (1989)).

■ *Burford* abstention originated in cases where the plaintiff was seeking equitable relief, but it has been extended to actions seeking declaratory relief and damages, *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), although for damages only a stay of the action is authorized, not a remand or dismissal. *Id.*

The Liquidator contends that we should abstain under *Burford* for the following reasons. To begin with, timely and adequate review is available in the state courts; indeed, the case was removed from the Pennsylvania Commonwealth Court. Next, the first criterion has been satisfied because the case presents three difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar. She asserts that they are all unsettled and that abstention on all three would allow state courts to decide if arbitrators should be allowed to resolve these important issues. She also emphasizes that the first two of these questions are statutory-liquidation issues, rather than issues merely involving Cologne's contractual rights under the Coinsurance Agreement.

The first question of state law is whether the Liquidator is entitled to terminate the Stop Loss Agreement under 40 P.S. § 221.21 which, as relevant here, terminates American Integrity's duty to insure on any agreements 30 days after the liquidation order is entered.[1] For the Liquidator, this provision means that she no longer has to honor the Stop Loss Agreement since the Agreement represents insurance for the reinsurer, Cologne. However, Cologne has taken the position that if the Liquidator terminates the Stop Loss Agreement, then the Coinsurance Agreement terminates as well, under a principle of contract law that two writings executed together and dealing with the same subject matter should be construed together and interpreted as a whole, citing *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir.1986).

The second question of state law is whether 40 P.S. § 221.32 prohibits Cologne from invoking its contractual right of setoff. Two subsections of section 221.32 are involved here, subsection (b)(2) and subsection (b)(3). Section 221.32 generally allows a party to setoff a mutual debt or credit against the insolvent insurer with certain exceptions. Among those exceptions, according to subsection (b)(2), is when the insurer's obligation to the entity seeking the setoff "was purchased by or transferred to the person with a view to its being used as a setoff." Another exception, according to subsection (b)(3), is when, in part, the obligation of the entity seeking the setoff is "in the nature of a capital contribution" to the insolvent insurer.[2]

The Liquidator contends that section 221.32(b)(2) bars a setoff here for the

---

1. Section 221.21 provides as follows:

 All insurance in effect at the time of issuance (sic) an order of liquidation shall continue in force only with respect to the risks in effect, at that time (i) for a period of thirty days from the date of entry of the liquidation order; (ii) until the normal expiration of the insurance coverage; (iii) until the insured has replaced the insurance coverage with equivalent insurance in another insurer or otherwise terminated the policy; or (iv) until the liquidator has effected a transfer of the policy obligation pursuant to section 523(8), whichever time is less.

2. Section 221.32 reads as follows:

 a) Mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article shall be setoff and the balance only shall be allowed or paid, except as provided in subsection (b).

 b) No setoff or counterclaim shall be allowed in favor of any person where:

 (1) the obligation of the insurer to the person would not at the date of the filing of a petition for liquidation entitle the person to share as a claimant in the assets of the insurer;

 (2) the obligation of the insurer to the person was purchased by or transferred to the person with a view to its being used as a setoff;

 (3) the obligation of the person is to pay an assessment levied against the members or subscribers of the insurer, or is to pay a balance upon a subscription to the capital stock of the insurer, or is in any other way in the nature of a capital contribution; or

 (4) the obligation of the person is to pay premiums, whether earned or unearned, to the insurer.

amounts Cologne says American Integrity owes it under the Stop Loss Agreement because the Stop Loss Agreement and the amended setoff provision in the Coinsurance Agreement were intended to be used as a setoff by Cologne. (The Liquidator points out that the amended setoff provision allowed the parties to setoff debts arising from any agreement between them, not just the Coinsurance Agreement, as originally agreed.)

The Liquidator also argues section 221.32(b)(3) bars a setoff here because the Stop Loss Agreement and the amended setoff provision were in the nature of a capital contribution by Cologne to American Integrity. The Liquidator maintains that the agreements were intended to shore up American Integrity's "statutory surplus" (that is, as the Liquidator defines it, its margin of assets over liabilities available to pay claims) so that its capital would look sufficient for regulatory purposes and enable it to continue to write policies.

The third question of state law is whether Cologne should be allowed to rescind the Coinsurance Agreement against an insolvent insurer. Cologne maintains that American Integrity fraudulently induced it into making the agreement and that it is entitled to rescind the contract. The Liquidator argues that if recission is allowed, it will take assets (identified by the Liquidator as reinsurance coverage) from the American Integrity estate and thereby reduce distribution to American Integrity's creditors.

The Liquidator next argues that the second criterion for *Burford* abstention has been satisfied, that exercising our jurisdiction here "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." The Liquidator identifies four such matters.

The first matter is the "threshold" issue of whether, because of the importance of Pennsylvania's statutory scheme for the liquidation of insolvent insurers, an arbitration clause should be enforceable against a liquidator of an insolvent insurer. The Liquidator maintains that this is a question that should be resolved in the first instance by a state court. She also points out that the McCarran–Ferguson Act, 15 U.S.C. § 1012, preserves the state regulation of insurance from federal preemption and argues that federally compelled arbitration would impair that regulation. Finally, she argues that exceptions from arbitration in the Convention itself depend on interpretation of state law on insurer insolvency. In support, she cites *Corcoran v. Ardra Insurance Co., Ltd.*, 77 N.Y.2d 225, 566 N.Y.S.2d 575, 567 N.E.2d 969 (N.Y.1990), and *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

Second, there is Pennsylvania's important policy interest, already recognized by the federal courts, in the orderly liquidation of insolvent insurance companies. *See Grode v. Mutual Fire, Marine & Inland Insurance Co.*, 8 F.3d 953, 959 (3d Cir.1993)("The regulation of insolvent insurance companies is surely an important state interest,...."); *Lac D'Amiante du Quebec v. American Home Assurance Co.*, 864 F.2d 1033, 1045 (3d Cir.1988)(applying *Burford* abstention in the context of an insolvent insurance company).

Third, there is the policy of conferring exclusive jurisdiction of "insurer insolvencies" in the commonwealth court where "an experienced cadre of state judges" can thereby obtain "specialized knowledge in the field" and expertly administer the proceedings. (Liquidator's supporting brief on remand at p. 13, quoting in part *Quackenbush, supra*, 517 U.S. at 724, 116 S.Ct. at 1724, 135 L.Ed.2d at 18)(quoted case and internal quotation marks omitted). *See also Maleski v. Conning*, 1995 WL 570466 (E.D.Pa.)(recognizing the commonwealth court as a specialized tribunal for regulating the insurance industry).

Fourth, there is Pennsylvania's interest in seeing that its state insolvency rules regulating the insurance industry are enforced but arbitration may disrupt it in the following ways. The arbitration clause permits the arbitrators to apply the law loosely; the clause puts enforcement of the insurance laws in the hands of industry executives, the persons the law is supposed to regulate; and arbitration decisions will establish no precedent, preventing the creation of a consistent body of case law.

The Liquidator has also chain-cited a number of cases in which federal courts have abstained under *Burford* in litigation by state rehabilitators or liquidators. *See Feige v. Sechrest,* 90 F.3d 846 (3d Cir.1996); *Dykhouse v. Corporate Risk Management Corp.,* 961 F.2d 1576 (6th Cir.1992)(unpublished disposition at 1992 WL 97952 and 1992 U.S.App. LEXIS 11238); *Hartford Casualty Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419 (7th Cir.1990); *Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d 31 (2d Cir.1988); *Grimes v. Crown Life Ins. Co.,* 857 F.2d 699 (10th Cir.1988).

Opposing remand, Cologne makes the following arguments that *Burford* abstention is not appropriate. First, unlike the cases cited by the Liquidator, this case involves a federal question. Under the Convention, the United States agreed to honor arbitration clauses in international agreements and conferred jurisdiction on district courts to enforce them. Cologne points to 9 U.S.C. §§ 203 and 205, provisions in the Federal Arbitration Act. Section 203 confers jurisdiction on federal district courts for actions arising under the Convention, and 9 U.S.C. § 205 allows a case filed in state court to be removed to district court. In short, enforcement of arbitration agreements is a "substantial federal concern," *Quackenbush, supra,* 517 U.S. at 728–29, 116 S.Ct. at 1727, 135 L.Ed.2d at 21, especially when an international agreement to arbitrate is present. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 537, 115 S.Ct. 2322, 2328, 132 L.Ed.2d 462, 474 (1995)("The expansion of American business and industry will hardly be encouraged, ... if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.")(quoted case omitted). *See also Grode, supra,* 8 F.3d at 960–61 (*Burford* abstention is disfavored when a defendant seeking arbitration invokes federal jurisdiction by way of the Convention and the FAA).

Second, this action has nothing to do with Pennsylvania's statutory scheme for the regulation of the business of insurance because it is not an action against an insolvent insurer's estate that might deprive it of assets; instead, it is an action by the Liquidator against a third party, here a reinsurer for the insolvent insurer, to recover money for the estate on a breach-of-contract claim. In support, Cologne cites *Grode, supra,* where the Third Circuit held that such an action was not part of the regulatory scheme and could not interfere with it.

Third, for the same reason, and also relying on *Grode,* federal jurisdiction is not preempted by the McCarran–Ferguson Act. As the Third Circuit stated in *Grode:*

The McCarran–Ferguson Act, strenuously argued by the Commissioner before this court as justifying abstention, is totally irrelevant. This Act, *inter alia,* provides: "No Act of Congress shall be construed to ... supersede any law enacted by any State for the purpose of regulating insurance...." 15 U.S.C.A. § 1012(b). The action instituted by the Commissioner in this case has nothing to do with Pennsylvania's regulation of insurance.

*Id.* at 960.

Fourth, Cologne argues that the first criterion for *Burford* abstention has not been satisfied here because there are no unsettled issues of state law bearing on important policy problems transcending the result in the case at bar. The defendant presents two reasons in support. To begin with, arbitrators will easily be able to resolve the three issues the Liquidator says are unsettled: whether the Stop Loss Agreement should be terminated under 40 P.S. § 221.21, whether Cologne can rely on its contractual right of setoff in the face of the cited provisions of 40 P.S. § 221.32, and whether rescission is available to Cologne as against the Liquidator. Next, Cologne asserts that these issues have been resolved by regulation. It points to recent Pennsylvania regulations detailing the conditions under which an insurance company may list assets in its financial statements based on reinsurance agreements and which provided that reinsurance agreements like the one at issue here were grandfathered until December 31, 1995. *See* 31 Pa.Code § 162.1–162.9.

Finally, Cologne contests the Liquidator's reasons for asserting that the second criterion for *Burford* abstention has been satisfied, contending that exercising our jurisdiction

here would not disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern.

First, Cologne asserts there is no policy of conferring exclusive jurisdiction of insurer insolvencies in the commonwealth court, citing *Foster v. Philadelphia Manufacturers*, 140 Pa. Cmwlth. 186, 592 A.2d 131 (1991). In *Foster*, the commonwealth court directed the insurance commissioner as statutory rehabilitator to arbitrate her contract claim against a reinsurer, based in part on the insolvent insurer's agreement to arbitrate all disputes arising from the reinsurance agreements. Additionally, Cologne cites two provisions of the Insurance Department Act, 40 P.S. §§ 221.4(c) and 221.23(12), which it asserts indicate that commonwealth-court jurisdiction is not exclusive because these provisions allow trial of disputes in forums other than the commonwealth court.

Cologne also asserts that our exercise of jurisdiction to order arbitration would not disrupt the application of Pennsylvania's insurer insolvency rules. The Defendant discounts the Liquidator's position that arbitrators will ignore Pennsylvania law by noting that under the arbitration provision the Liquidator and Cologne each choose one arbitrator and the two arbitrators pick the third.

In the court's view, the scope of *Burford* abstention can often appear elusive because of the verbal abstractions used to define it. *See Todd v. DSN Dealer Service Network, Inc.*, 861 F.Supp. 1531, 1536 (D.Kan.1994). As the Supreme Court noted in *Quackenbush, supra*, there is no "formulaic test for determining when dismissal under *Burford* is appropriate . . . ." 517 U.S. at 727, 116 S.Ct. at 1726, 135 L.Ed.2d at 20. The abstention decision is informed by the "discretion historically enjoyed by courts of equity" and by "principles of federalism and comity." *Id.* at 728, 116 S.Ct. at 1726, 135 L.Ed.2d at 20 (quoted case omitted). Ultimately, the federal court must:

> balance[ ] the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem, [citations omitted], and

retaining local control over difficult questions of state law bearing on policy problems of substantial public import [citation omitted]. This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.

*Id.*, 116 S.Ct. at 1727, 135 L.Ed.2d at 20. (citations and internal quotation marks omitted) (brackets added). Nonetheless, we believe that *Quackenbush, supra*, and *Grode, supra*, provide the necessary guidance in this case for sorting through the various contentions of the parties and the cases cited in support.

At the outset, we note that adequate state-court review is available. There is no dispute that the Pennsylvania Commonwealth Court could adjudicate this case. Thus, we turn our attention to the first criterion, whether we should abstain because there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar.

We do not believe that there are. Initially, we reject Cologne's reliance on the regulations specifying the conditions under which the Insurance Department will recognize assets in an insurer's financial statements based on reinsurance agreements. Those regulations do not address the issues the Liquidator raises here. However, we do agree with Cologne that at lest the first two state-law issues are not uncertain or difficult. As noted, 40 P.S. § 221.21 terminates the insolvent insurer's obligation to insure 30 days after the liquidation order is entered. 40 P.S. § 221.32 governs when a person can setoff mutual debts or mutual credits with an insolvent insurer. The arbitrators will have to apply this law, but just because they may not apply it in the manner argued by the Liquidator does not make these issues uncertain or difficult.

As to the issue of rescission, based on the principles of equity and comity we must apply, that Cologne may raise rescission as a defense does not require us to abstain, even

if the issue is an uncertain one in liquidation proceedings. We consider it unusual that a plaintiff in a suit for breach of contract would seek a declaratory judgment anticipating two defenses that might be made to the monetary damages demanded. Outside the context of insurer insolvency, this type of case would probably only be one seeking damages. Since the case is really a damages action, we refuse to exercise our discretion to abstain when the requests for declaratory relief were probably included simply to set the table for an abstention motion under *Burford.* (However, we will revisit the rescission issue at the end of this memorandum and limit it to a defensive use only.)

We are buttressed in this conclusion by the Liquidator's reliance on *Grimes, supra,* and *Todd, supra.* At least in regard to the statutory-liquidation provision dealing with setoff, she asserts that the issue is tied to the liquidation proceedings. However, as shown below by our discussion of *Grode,* because this is not an action against the estate, this case does not involve the liquidation proceedings, and *Grimes* and *Todd* are distinguishable.

 Having decided that the first criterion does not require abstention, we turn to the second one. The second criterion requires abstention where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Riley, supra,* 45 F.3d at 771.

As noted, the Liquidator asserts that the first matter that would be disrupted is the orderly liquidation of insolvent insurance companies. We reject this argument because, as Cologne asserts, *Grode* establishes that this action has nothing to do with American Integrity's liquidation proceedings.

In *Grode,* the Pennsylvania Insurance Commissioner as rehabilitator of the insolvent insurer, Mutual Fire, Marine and Midland Insurance Company, sued two Bermuda reinsurers in commonwealth court to recover $5 million allegedly due on numerous reinsurance agreements. Asserting federal-question jurisdiction under the Convention because the agreements contained arbitration clauses, the defendants removed the case to federal court and moved to compel arbitration. In reversing the district court's decision to abstain under *Burford,* the Third Circuit stated that interference with Pennsylvania's comprehensive scheme for regulating insolvent insurers did not justify abstention. Acknowledging that if there were such interference, it would support *Burford* abstention, the court of appeals reasoned it did not exist in *Grode* because a suit by the Liquidator to recover damages for the insolvent estate was not part of the regulatory scheme. We quote at length the Third Circuit's explanation because its approach to this crucial issue will play a major role in our assessment of cases the Liquidator has cited from other jurisdictions and ultimately our resolution of the Liquidator's motion:

> Although the regulation of insolvent insurance companies is surely an important state interest, this case does not involve the complex and highly regulated issues of insurance regulation; rather, it is a simple contract action involving an allegedly unpaid debt. The complex regulations relating to insolvent insurance companies have to do with plans of rehabilitation and payment to policy holders. Simple contract and tort actions that happen to involve an insolvent insurance company are not matters of important state regulatory concern or complex state interests.
>
> . . . .
>
> In other words, courts abstain in suits against insolvent insurance companies for the same reasons that district courts refer bankruptcy cases to the bankruptcy courts: Insurance companies tend to issue identical policies to a large number of people, rendering a single forum necessary to dispose equitably of the company's limited assets so as to avoid a race to the courthouse. *Id.* at 1045–46. However, such a concern is not present in this case. This is not a suit against the insurance company or the Insurance Commissioner, or a claim on assets of the debtor. The case is an action instituted by the Commissioner against the Bermuda Corporations to recover an alleged debt.

The insolvent insurance company, Mutual Fire, is the plaintiff, not the defendant. As a result, there is not a large number of similarly situated plaintiffs competing for a limited amount of money. The insolvent insurer in liquidation is not called upon "to dissipate its funds *defending* unconnected suits across the country." *American Home,* 864 F.2d at 1045 (emphasis added). Rather, the insurance company is the only plaintiff and the defendants are not insolvent. Thus, this case is distinguishable from those in which the insolvent insurance company is the defendant, and there is no important state interest here involved to warrant abstention.

*Id.* at 959–60 (footnote omitted).

Since this case is like *Grode* in that it is also a suit by the Liquidator to collect a debt on a contract, *Grode* requires us to reject the Liquidator's argument that this case involves the Pennsylvania scheme for the liquidation of insolvent insurers.

We reject the Liquidator's attempt to distinguish *Grode* on the ground that there were no uncertain issues of state law there, just a simple contract action, as the Third Circuit put it. For the reasons set forth above, we do not believe that the Liquidator's assertion that unsettled state-law issues are present here is sufficient to distinguish *Grode* or requires us to abstain under *Burford.*

As further support, the Liquidator also cites *Todd, supra,* 861 F.Supp. 1531, in which the district court abstained, in part, when some state-law issues were uncertain. We reject the Liquidator's attempt to pull one strand from the court's analysis in *Todd* as justification for *Burford* abstention here.

*Todd* does have some similarity to the instant case. There, the Liquidator, the Kansas Insurance Commissioner, was the plaintiff, suing entities and individuals related to the insolvent insurer in the liquidation court to recover on various causes of action, including three under the Kansas liquidation statute.

But the similarities end there. *Todd* is distinguishable for the following reasons. In *Todd,* the district court was faced not only with uncertain state law issues but with the following factors not present in the case at bar. First, the defendants had removed the case to federal court solely on the basis of diversity jurisdiction. There was no federal question present. Second, Kansas had created a special state forum to adjudicate all disputes involving insolvent insurers. Third, one of the defendants in the action had made a claim in the liquidation proceedings, and the Liquidator would raise in defense of claims in those proceedings the issues he was raising in the action.

In the instant case, on the other hand, the Convention presents an important federal law issue on arbitration, the commonwealth court is not the exclusive forum for all actions arising from the liquidation (as will be shown below), and we have decided that the state-law issues are not difficult or otherwise do not require abstention.

The Liquidator also relies on *Lac D'Amiante, supra.* That case is distinguishable because, unlike *Grode* and the instant case, an insured had sued the insolvent insurer, then in liquidation in New York State. In accord with *Grode,* the Third Circuit ruled that the district court should have abstained since requiring all claimant-insureds to go to one forum allows for a fair distribution of the assets. Additionally, New York has a comprehensive scheme of regulating the liquidation of insurance companies that requires all disputes to be resolved in one forum.

■ The second matter the Liquidator argues would be disrupted is the purported policy of conferring exclusive jurisdiction of insolvency proceedings in the commonwealth court so that state judges can obtain specialized knowledge and expertly administer such proceedings. We reject this argument because we agree with Cologne that the commonwealth court does not have exclusive jurisdiction of any lawsuit pertaining to an insolvent insurer that may be undergoing liquidation or rehabilitation.

The Liquidator argues that the commonwealth court has exclusive jurisdiction by virtue of 42 Pa.C.S. §§ 761(a)(3) and 761(b). She also relies on *Maleski v. DP Realty Trust,* 653 A.2d 54 (Pa.Cmwlth.1994). In

pertinent part, section 761 provides as follows:

**(a) General Rule.**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

. . . .

(3) Arising under Article V ... known as "The Insurance Department Act of 1921."

**(b) Concurrent and exclusive jurisdiction.**—The jurisdiction of the Commonwealth Court under subsection (a) shall be exclusive ... except with respect to actions or proceedings by the Commonwealth government, including any officer thereof, acting in his official capacity, where the jurisdiction of the court shall be concurrent with the several courts of common pleas.

In *DP Realty Trust,* the Pennsylvania Insurance Commissioner as statutory liquidator sued certain defendants for breach of contract, breach of fiduciary duty, conversion, fraud, fraudulent conveyance and negligence. The defendants moved to dismiss, in part, on the basis of an alleged agreement that the parties would litigate all claims in the United States District Court for the Eastern District of Pennsylvania. The commonwealth court rejected the argument. Among other reasons, it stated: "Further, the General Assembly has expressly stated that claims as-serted by the Statutory Liquidator must be brought in this Court. To require otherwise would contravene this expressed intent." *Id.* at 65 (footnote omitted). In support of this statement, the court cited 40 P.S. § 221.4(d) without any explanation as to why it concluded that subsection (d) conferred exclusive jurisdiction.

Section 221.4 is a lengthy provision of Article V that deals with jurisdiction and venue and we set it out in the margin.[3] It is not at all clear that subsection (d) supports the commonwealth court's conclusion. That subsection merely provides that: "All action herein authorized shall be brought in the Commonwealth Court of the Commonwealth of Pennsylvania." However, it does not define what "All action herein authorized" means. Subsection (a) provides that "[n]o court of this Commonwealth shall have jurisdiction to entertain, hear or determine any delinquency proceeding other than as provided in this article." (Brackets added). In 40 P.S. § 221.3, Article V specifically defines a "delinquency proceeding." It does not include the instant type of action.[4]

And, contrary to the court's interpretation, subsection 221.4(b) contemplates actions in Pennsylvania state courts other than the commonwealth court. It provides that "a court of this Commonwealth having" subject-matter jurisdiction of an action specified in

3. Section 221.4 provides as follows:

(a) No court of this Commonwealth shall have jurisdiction to entertain, hear or determine any delinquency proceeding other than as provided in this article.

(b) In addition to other grounds for jurisdiction provided by the law of this Commonwealth, a court of this Commonwealth having jurisdiction of the subject matter has jurisdiction over a person served pursuant to the Pennsylvania Rules of Civil Procedure or other applicable provisions of law in an action brought by the receiver of a domestic insurer or an alien insurer domiciled in this Commonwealth (i) if the person served is obligated to the insurer in any way as an incident to any agency or brokerage arrangement that may exist or has existed between the insurer and the agent or broker, in any action on or incident to the obligation; or (ii) if the person served is a reinsurer who has at any time written a policy of reinsurance for an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced, or is an agent or broker of or for the reinsurer, in any action on or incident to the reinsurance contract; or (iii) if the person served is or has been an officer, manager, trustee, organizer, promoter or person in a position of comparable authority or influence in an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced, in any action resulting from the relationship with the insurer.

(c) If the court on motion of any party finds that any action should as a matter of substantial justice be tried in a forum outside this Commonwealth, the court may enter an appropriate order to stay further proceedings on the action in this Commonwealth.

(d) All action herein authorized shall be brought in the Commonwealth Court of the Commonwealth of Pennsylvania.

4. Section 221.3 defines "delinquency proceeding" as "any proceeding instituted against an insurer for the purpose of liquidating, rehabilitating, reorganizing or conserving such insurer, and any summary proceeding under [40 P.S. §§ 221.10–221.13]." (Brackets added).

subsection (b) shall have personal jurisdiction over the defendant as well. The phrase "a court of this Commonwealth" is an odd one to use if all claims by the statutory liquidator have to be brought in the commonwealth court. Moreover, one of the actions mentioned in subsection (b) is an action just like the instant one, an action against "a reinsurer who has at any time written a policy of reinsurance for an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced ..."

Finally, and as Cologne points out, subsection (c) provides that "any action" may be "tried in a forum outside this Commonwealth" if a party so moves and the court orders it.

Further, section 761 does not help the Liquidator either. While subsection 761(a) may confer exclusive original jurisdiction of Article V actions on the commonwealth court, subsection (b) provides that the common pleas courts shall have concurrent jurisdiction along with the commonwealth court of actions initiated by the Insurance Commissioner in her official capacity.

In opposing the Liquidator's motion, Cologne points to another Article V provision, section 221.23(12), that indicates the commonwealth court does not have exclusive jurisdiction. In pertinent part, section 221.23(12) authorizes the Liquidator to:

> continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this Commonwealth or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further.

Focusing on the language allowing the Liquidator to institute suits "and other legal proceedings," Cologne contends that "other legal proceedings" include arbitration, citing *Costle v. Fremont Indemnity Co.*, 839 F.Supp. 265, 275 (D.Vt.1993)(interpreting a parallel provision of Vermont law dealing with insurer liquidations as authorizing the statutory liquidator to arbitrate a claim on behalf of the insolvent insurer).

Cologne also relies on *Foster v. Philadelphia Manufacturers*, 140 Pa. Cmwlth. 186, 592 A.2d 131 (1991), in which the commonwealth court, pursuant to the arbitration clauses in the agreements, ordered the Insurance Commissioner as the statutory rehabilitator of an insolvent insurer to arbitrate her claim for breach of reinsurance agreements. Significantly, in doing so, the court rejected the Rehabilitator's reliance on *Corcoran v. Ardra Insurance Co.*, 77 N.Y.2d 225, 566 N.Y.S.2d 575, 567 N.E.2d 969 (N.Y.1990), a case the Liquidator relies on here, where the New York Court of Appeals, ruled that a liquidator did not have to arbitrate a claim against a reinsurer. The commonwealth court stated as follows:

> The Rehabilitator refers us to the authority in which the contractual right to arbitration has been denied in insurance insolvency proceedings. *Washburn v. Corcoran*, 643 F.Supp. 554 (S.D.N.Y.1986); *Corcoran v. Ardra Insurance Co.*, 77 N.Y.2d 225, 566 N.Y.S.2d 575, 567 N.E.2d 969 (1990). However, those cases were decided under the New York liquidation statute, which had been interpreted by that jurisdiction's highest court to have provided a comprehensive and exclusive statutory mechanism for resolving all disputes in the context of an insurance company receivership. *In the Matter of Allcity Insurance Co.*, 66 A.D.2d 531, 413 N.Y.S.2d 929 (1979). In contrast, our Supreme Court has never held that Article V of the Insurance Company Law requires this Court, expressly or by implication, to be the single forum in which all disputes must be resolved. *Grode v. The Mutual Fire Marine and Inland Insurance Co.*, 132 Pa.Cmwlth 196, 572 A.2d 798 (1990). In the absence of such authority, we are reluctant to divest parties of the opportunity to arbitrate, particularly when our Supreme Court has consistently favored contractual arbitration provisions and steadfastly held that they are to be enforced whenever possible.

*Id.* at 190, 592 A.2d at 133. The court also found it significant that the approved plan of rehabilitation contemplated that the parties could submit claims to arbitration, including a claim on a reinsurance agreement. *Id.*, 592 A.2d at 133.

We note that *Philadelphia Manufacturers* relied on *Mutual Fire*. *Mutual Fire* approved a rehabilitation plan that, over the Insurance Commissioner's objections, did not confer exclusive jurisdiction on the commonwealth court to resolve all claims for or against the rehabilitated insurer. *Mutual Fire* was affirmed on appeal by the Pennsylvania Supreme Court. The supreme court indicated that the only claims within the exclusive jurisdiction of the commonwealth court would be those involving the "delinquency proceedings," understood by the court as "matters concerning the interpretation of the Plan and the rehabilitation itself pursuant to 40 P.S. § 221.4." *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 632, 614 A.2d 1086, 1103 (1992). Other claims could go to arbitration. *Id.*

For the purpose of determining the scope of the commonwealth court's jurisdiction over liquidation matters, the authority of the Commissioner as liquidator is the equivalent of her authority as rehabilitator. Further, section 221.4 applies in both circumstances. We thus conclude that the commonwealth court does not have exclusive jurisdiction over all disputes connected to liquidation proceedings, and hence Pennsylvania could not have a policy of putting all such disputes, as opposed to disputes involving the interpretation of the plan and the liquidation itself, before a specialized tribunal.

In her reply brief, the Liquidator asserts that jurisdiction is nonetheless exclusive in the commonwealth court because section 221.4(c) requires commonwealth-court approval before a dispute can be resolved in another tribunal and that while section 221.23(12) empowers the Liquidator to initiate proceedings outside the Commonwealth, she has not done so in this case, preferring to proceed before the commonwealth court. She cites *Todd, supra*, in which the court construed similar provisions of Kansas law, *see* K.S.A. § 40–3608(d) and § 40–3625(14), as conferring exclusive jurisdiction on the liquidation court.

We reject this argument because, unlike the district court in *Todd*, we have state-court decisions, *Foster v. Mutual Fire, supra*, and *Philadelphia Manufacturers*, holding that under the Pennsylvania scheme, commonwealth-court jurisdiction is not exclusive. In any event, the issue is not whether commonwealth-court approval is necessary, or whether the Liquidator can decide if she wants to litigate in another forum, but whether the other tribunals can exert jurisdiction. If they can, and if they do resolve disputes connected to the liquidation proceedings, that is all that is necessary to reject the Liquidator's exclusive-jurisdiction argument.

The third matter the Liquidator argues would be disrupted is Pennsylvania's attempt at regulating the insurance industry by state insolvency rules. Under the arbitration clause, arbitrators need not apply the law strictly and enforcement of the insurance laws is placed in the hands of industry executives, the persons the law is supposed to regulate. Given the wide latitude arbitrators have, the Liquidator argues that the arbitrators will ignore the liquidation law bearing on her reinsurance claim against Cologne and thereby frustrate enforcement.

We reject this argument as well. To begin with, we doubt if the argument has any bearing on *Burford* abstention; it probably should be discussed in connection with Cologne's motion to compel arbitration. In any event, as Cologne argues, the argument has no merit. Under the arbitration provision, the Liquidator chooses one of the arbitrators, Cologne selects another, and those two designate a third. This provisions should insure that the arbitrators do not act in an arbitrary fashion.

Our conclusion concerning the commonwealth court's lack of exclusive jurisdiction also has some bearing on this argument. The state supreme court has approved of arbitration of disputes like the present one. Hence, it could hardly frustrate state policy on the enforcement of insurer liquidation law to turn it over to arbitrators.

Finally, the Liquidator's stance conflicts with the modern approach to arbitration. Her unstated fear that arbitrators will simply do as they please has been rejected as a basis for refusing to honor arbitration agreements. *See Mitsubishi Motors Corp. v. Sol-*

*er Chrysler Plymouth, Inc.,* 473 U.S. 614, 634, 105 S.Ct. 3346, 3357–58, 87 L.Ed.2d 444, 460 (1985)("We decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators.").

We therefore conclude that *Burford* abstention is not appropriate. In reaching this conclusion, we have considered the cases the Liquidator has chain-cited. They are all distinguishable. *Feige v. Sechrest,* 90 F.3d 846 (3d Cir.1996), *Dykhouse v. Corporate Risk Management Corp.,* 961 F.2d 1576 (6th Cir.1992)(unpublished disposition at 1992 WL 97952 and 1992 U.S.App. LEXIS 11238), and *Hartford Casualty Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419 (7th Cir.1990), are all cases in which suit had been filed seeking to collect against the assets of an insolvent insurer and which did not present the important federal-law issue of arbitration under the FAA or the Convention.

*Corcoran v. Ardra Insurance Co., Ltd.,* 842 F.2d 31 (2d Cir.1988), is similar to the instant case because it was a suit by the statutory liquidator to recover on reinsurance policies which had been removed to district court on the basis of arbitration clauses in the agreements. Nonetheless, it is distinguishable for two reasons. First, the Second Circuit abstained because whether a liquidator was bound by the insolvent insurer's arbitration agreement was a novel issue in New York. That issue is settled in Pennsylvania. As will be shown below, the Liquidator stands in the shoes of the insurer. Second, the Second Circuit took an approach to a suit on a reinsurance agreement opposite to that of the Third Circuit. The Second Circuit considers such a suit to be part of the state scheme for regulating insolvent insurance companies, reasoning that the "extent to which the Superintendent is able to collect ... affects the degree to which the insolvent insurer's estate will have assets sufficient to satisfy the claims of its creditors." 842 F.2d at 37. As noted above, in *Grode,* the Third Circuit ruled that such a suit has no effect on the statutory scheme.

*Grimes v. Crown Life Ins. Co.,* 857 F.2d 699 (10th Cir.1988), is also similar to the instant case in that it was a suit by the Oklahoma Liquidator seeking a declaratory judgment that a reinsurer had to honor a reinsurance agreement. However, the rest of the case is distinguishable because: (1) there was no federal arbitration issue; (2) Oklahoma had conferred exclusive jurisdiction on one state court to handle all disputes connected to liquidation proceedings; and (3) like the Second Circuit in *Ardra,* the Tenth Circuit considered a suit to collect on a reinsurance agreement one that affected the assets of the estate.

### 2. Colorado River Abstention.

The Liquidator has also moved for abstention under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Colorado River* abstention is available when there are parallel state proceedings and other factors we need not list here counsel abstention. The Liquidator asserts that there is a parallel state proceeding in the form of the injunction in the liquidation order prohibiting First Fidelity from disbursing or transferring any funds from the Trust Account unless directed in writing by the Liquidator. She also asserts that the instant proceedings will interfere with that injunction because an "arbitration panel cannot comprehensively resolve this case without disposing of the trust account." (Supporting brief at p. 15).

We reject this argument. The complaint in the instant action does contain a prayer for relief that the Trust Account be disbursed to the Liquidator, but we need not retain jurisdiction over that claim. *See Dykhouse, supra,* (remanding the defendant's counterclaims to the liquidation court). In fact, since the commonwealth court has already asserted control of the bank account, we would have no jurisdiction over it. *See Colorado River, supra,* 424 U.S. at 818, 96 S.Ct. at 1246–47, 47 L.Ed.2d at 498–90; *Munich American Reinsurance Co. v. Crawford,* 141 F.3d 585, 594 n. 6 (5th Cir.1998).

As to the remaining relief requested, that would only go to establishing whether the Liquidator has a right to a judgment against Cologne. Any ruling from the arbitrators may or may not be consistent with what the

commonwealth court may do with the Trust Account, but the possibility of inconsistent rulings does not mean we must abstain, as the Ninth Circuit indicated in *Quackenbush* on remand from the Supreme Court. *See Quackenbush v. Allstate Insurance Co.*, 121 F.3d 1372 (9th Cir.1997).

### 3. *Rescission.*

██ This brings us to our unfinished business with rescission. We will not permit Cologne to raise rescission as an affirmative claim in the arbitration proceedings.

Rescission amounts to the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief.

*Erie Telecommunications, Inc. v. City of Erie*, 853 F.2d 1084, 1092 (3d Cir.1988)(internal quotation marks and quoted cases omitted)(applying Pennsylvania law). "The purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract. [citation omitted]. One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract." *Keenheel v. Commonwealth of Pennsylvania Securities Commission*, 134 Pa. Cmwlth. 494, 501, 579 A.2d 1358, 1361 (1990). As such, rescission would be a claim on the assets of the estate and would involve Pennsylvania's regulatory scheme. We should abstain from permitting any such relief. However, as a purely defensive measure, we will allow Cologne to present in the arbitration the fraudulent circumstances it believes justifies rescission. *See In re Liquidation of Union Indemnity Insurance Company*, 89 N.Y.2d 94, 651 N.Y.S.2d 383, 674 N.E.2d 313 (N.Y.1996). We need not resolve at this time any preclusive effect the arbitration proceedings might have on the liquidation proceedings and vice versa. *See Quackenbush, supra*, 121 F.3d at 1379.

### 4. *Conclusion.*

In summary, we refuse to abstain under *Burford* for the following reasons: (1) this case presents the important federal question of enforcing arbitration agreements under the Convention and the FAA; (2) two of the three issues of state law the Liquidator claims are uncertain really are not, and the third does not predominate over the essentially legal aspect of this case; (3) Pennsylvania has not conferred exclusive jurisdiction in the liquidation court over any and all claims that might arise during the liquidation of an insolvent insurer; and (4) the Third Circuit has ruled that a claim by a liquidator as a plaintiff to recover assets for the estate has no bearing on Pennsylvania's scheme for regulating insolvent insurers.

We turn now to Cologne's motion to stay this action and compel arbitration.

### B. *Cologne's Motion to Stay the Action and Compel Arbitration.*

██ Cologne moves for an order compelling arbitration on the following grounds. The Convention on the Recognition of Foreign Arbitral Awards is enforced in the United States. 9 U.S.C. § 201. "There is a broad arbitration agreement in the Coinsurance Agreement, requiring the contracting parties to arbitrate [a]ll disputes and differences." We have jurisdiction of actions removed from state court when the action "relates to an arbitration agreement ...." 9 U.S.C. § 205. Article II of the Convention in paragraph 3 requires the court to refer the parties to arbitration when one of the contracting parties requests it. Hence, Cologne argues this action should be stayed while the parties arbitrate their dispute.

The Liquidator opposes arbitration on the following grounds, reiterating some of the arguments made in regard to the abstention issues. First, the McCarran–Ferguson Act, 15 U.S.C. § 1012, reverse-preempts any federal attempt to regulate the business of insurance, citing *Stephens v. American International Insurance Co.*, 66 F.3d 41 (2d Cir. 1995). Second, arbitration would impair Pennsylvania's statutory scheme for regulating insurance for the same reasons advanced in support of *Burford* abstention. Third, Article II of the Convention in paragraph 3

does not authorize arbitration if the arbitration agreement "is null and void, inoperative or incapable of being performed." Citing *Corcoran v. Ardra*, 77 N.Y.2d 225, 566 N.Y.S.2d 575, 567 N.E.2d 969 (N.Y.1990), the Liquidator asserts that an agreement to arbitrate, while it may be enforceable against private parties, is inoperative as against her in her role as liquidator.

We reject the Liquidator's position. Based on the Third Circuit's decision in *Grode, supra*, 8 F.3d 953, this case, as a suit by the Liquidator to collect from a third party, does not involve the business of insurance. Thus, McCarran–Ferguson would not reverse-preempt federal regulation in this area. Second, we have already rejected the arguments made by the Liquidator in connection with *Burford* abstention. Third, the arbitration agreement is operative here because under Pennsylvania law, the Liquidator does stand in the shoes of the insolvent insurer and is bound by the insurer's contractual agreements, *Commonwealth ex rel. Kelly v. Commonwealth Mutual Insurance Co.*, 450 Pa. 177, 299 A.2d 604 (1973), even as to arbitration. *Philadelphia Manufacturers, supra*. The Liquidator's reliance on the New York Court of Appeals decision in *Ardra* is misplaced because that court has construed New York insurance insolvency law as prohibiting arbitration of claims made by a liquidator. As just noted, the opposite is true in Pennsylvania.

We will issue an appropriate order.